C. A. CHAPMAN, Appellant,

v.

John O. ENGLAND, Trustee of the Estate of Wilson Dore, Bankrupt, Appellee.

No. 14776.

United States Court of Appeals Ninth Circuit.

March 13, 1956.

Mahan & Harland, Gerald R. Harland, Fortuna, Cal., for appellant.

Shapro & Rothschild, Daniel Aronson, Jr., San Francisco, Cal., for appellee.

Before MATHEWS, HEALY and LEMMON, Circuit Judges.

MATHEWS, Circuit Judge.

This appeal is from a judgment affirming an order of a referee in bankruptcy.

On August 16, 1948, Wilson Dore was indebted to appellant, C. A. Chapman, in the sum of $4,000—an indebtedness evidenced by a note of Dore and Dore's wife dated August 16, 1948, due August 16, 1949, and bearing 6% interest from August 16, 1948. To secure that indebtedness and any subsequent indebtedness of Dore to appellant, Dore and Dore's wife, both of whom were at that time residents of Lewis County, Washington, executed in Lewis County on August 16, 1948, a chattel mortgage, hereafter called the mortgage, on personal property, hereafter called the mortgaged property, all of which was at that time located in Lewis County. Thereafter, on or before April 21, 1950, the mortgaged property was removed to Humboldt County, California, where it remained until October 6, 1951.

Apart from the mortgage, appellant had no right, title or interest in or to the mortgaged property at any time after August 16, 1948. From August 16, 1948, to October 6, 1951, the mortgaged property was owned by and in possession of Dore or Dore Lumber Company, a partnership consisting of Dore and LeGrand Anderson.

On April 21, 1950, in Humboldt County, the partnership obtained possession of a device called a log boss from Schurman Machine Works, hereafter called Schurman, under a conditional sales contract between the partnership as buyer and Schurman as seller.[1] The log boss remained in the partnership's possession in Humboldt County from April 21, 1950, to October 6, 1951.

By the terms of the conditional sales contract, title to the log boss did not pass to the partnership until the purchase price thereof was fully paid. The total purchase price of the log boss was $3,884.50, all of which was due and payable on or before July 21, 1950. However, $1,830.84 of the purchase price remained unpaid until November 13, 1950. On November 13, 1950, the $1,830.84 was paid to Schurman by appellant. Thereupon, on November 13, 1950, title to the log boss passed to the partnership.

Despite this fact, Schurman, on November 13, 1950, executed and delivered (1) to Dore a notice addressed to Dore "and/or" the partnership, stating that Schurman had repossessed the log boss,[2] and (2) to appellant a bill of sale whereby Schurman pretended to sell the log boss to appellant.[3] Actually, there was no such sale. The log boss was never repossessed by Schurman, was never delivered to appellant and was never in appellant's possession.

---

1. In this case, the record on appeal consists of papers and exhibits transmitted to our clerk by the clerk of the District Court. A typewritten transcript labeled "Record on Appeal" was filed here by appellant's counsel on July 20, 1955. Despite its label, that transcript is not the record on appeal, nor is it a complete or adequate transcript thereof. The record on appeal contains a "stipulated statement" which appellant and appellee filed with the referee on March 9, 1953, and documents attached to the "stipulated statement." One of the attached documents is a copy of the conditional sales contract mentioned above. The transcript filed by appellant's counsel does not contain a true copy of the "stipulated statement" or any copy of any document attached thereto.

2. The original notice is attached to the "stipulated statement" mentioned in footnote 1 and is part of the record on appeal. The transcript filed by appellant's counsel does not contain the notice or any copy of it.

3. The original bill of sale is attached to the "stipulated statement" mentioned in footnote 1 and is part of the record on appeal. The transcript filed by appellant's counsel does not contain the bill of sale or any copy of it.

Between August 16, 1948, and May 11, 1951, Dore's indebtedness to appellant was increased from $4,000 to $7,942.70.[4] Therefore, in lieu of the note of August 16, 1948, Dore and Dore's wife executed and delivered to appellant on May 11, 1951, a note for $7,942.70, due November 11, 1951, and bearing 5% interest from May 11, 1951. The note of May 11, 1951, was never paid in whole or in part.

On May 16, 1951, in California, six policies of fire insurance, hereafter called the policies, covering the mortgaged property and the log boss, were issued to the partnership by six insurance companies in amounts aggregating $15,000, as follows: Providence Washington Insurance Company, policy No. CF913588, $1,500; Camden Fire Insurance Association, policy No. 875573, $1,500; United States Fire Insurance Company, policy No. CL77656, $1,500; Springfield Fire & Marine Insurance Company, policy No. CS43522, $1,500; St. Paul Fire & Marine Insurance Company, policy No. 2C33744, $1,500; Sayre & Toso, Inc., policy No. LC6755, $7,500.

The loss payable clause of the Sayre & Toso policy named as loss payees the partnership and appellant, as their respective interests might appear. The loss payable clauses of the other five policies named appellant and no one else as loss payee.[5] All the policies, however, were issued to the partnership and named the partnership as the "insured" or the "assured."

On October 6, 1951, in Humboldt County, the mortgaged property and the log boss were destroyed by fire. Dore, on behalf of the partnership, submitted proofs of loss to the insurance companies. The insurance companies admitted liability in the aggregate amount of $15,000, but withheld payment thereof, being in doubt as to whether such payment should be made to the partnership or to appellant.

On March 19, 1952, Dore filed a petition in bankruptcy. Thereafter, prior to August 6, 1952, Dore was adjudged a bankrupt; the case was referred to a referee; appellee, John O. England, was appointed trustee of the bankrupt's (Dore's) estate; and, pursuant to 11 U.S.C.A. § 23, sub. i,[6] Dore's partner (Anderson) consented to the administration of the partnership's property in bankruptcy. Thus the partnership's property—including all of its right, title and interest in and to the policies and the proceeds thereof—became part of the estate.

On August 6, 1952, appellant filed with the referee a "proof of claim" wherein he made two claims against the estate— (1) a claim, hereafter called the note claim, for $7,942.70, with 5% interest from May 11, 1951, evidenced by the note of May 11, 1951, and (2) a claim, hereafter called the log boss claim, for $4,000. In his "proof of claim," appellant alleged, in substance, that the note claim was secured by the mortgage; that he was the owner of the log boss at the time of its destruction; and that its reasonable value at that time was $4,000.

On January 19, 1953, appellee filed objections[7] to appellant's "proof of claim" and obtained from the referee an order which, in effect, required appellant and the insurance companies to appear and show cause, on February 17, 1953, why the insurance companies should not be

---

4. An increase of $3,942.70. This may have included the $1,830.84 paid to Schurman by appellant on November 13, 1950.

5. The policies were not put in evidence and are not in the record on appeal. However, copies of the loss payable clauses of the policies were attached to and made part of a stipulation which appellant and appellee filed with the referee on August 25, 1953. The original stipulation and the attached copies of loss payable clauses are part of the record on appeal.

6. Section 23, sub. i, provides: " * * * In the event of one or more but not all of the general partners of a partnership being adjudged bankrupt, the partnership property shall not be administered in bankruptcy, unless by consent of the general partner or partners not adjudged bankrupt; * * * "

7. In his objections, appellee, in effect, denied that the note claim was secured and denied that appellant was ever the owner of the log boss.

required to pay the proceeds of the policies, aggregating $15,000, to appellee, and why appellee's objections to appellant's "proof of claim" should not be sustained.

Appellant and the insurance companies appeared in response to that order, and the referee, on February 17, 1953, conducted a hearing in which appellant, appellee and the insurance companies participated. Evidence was received by the referee on February 17, 1953, March 9, 1953,[8] and August 25, 1953.[9] On February 11, 1954, the referee made an order which, in effect, required the insurance companies to pay the proceeds of the policies to appellee, allowed the note claim as an unsecured claim, disallowed it as a secured claim and—impliedly, if not expressly—disallowed the log boss claim.

On petition of appellant, the District Court reviewed the referee's order of February 11, 1954,[10] and, on March 18, 1955, entered a judgment affirming it. This appeal followed.

Appellant contends that the District Court erred in affirming (1) that part of the referee's order which allowed the note claim as an unsecured claim and disallowed it as a secured claim and (2) that part of the referee's order which disallowed the log boss claim.[11]

## I.

As indicated above, the note claim was for the indebtedness evidenced by the note of May 11, 1951, which included the indetedness evidenced by the note of August 16, 1948, and subsequent indebtedness of Dore to appellant. The mortgage was given to secure the indebtedness evidenced by the note of August 16, 1948, and such subsequent indebtedness.

As indicated above, the mortgaged property was covered by the policies and was destroyed by fire. However, as indicated above, the policies were issued to the partnership, not to appellant; they named the partnership, not appellant, as the "insured" or the "assured;" and, though they named appellant as loss payee, they did not name him, and could not truthfully have named him, as owner of the mortgaged property.

Appellant, however, contends that the mortgage constituted an insurable interest in the mortgaged property on May 16, 1951, when the policies were issued, and on October 6, 1951, when the property was destroyed, and that he was therefore entitled to have the note claim allowed as a secured claim and paid out of the proceeds of the policies in preference to the claims of other creditors. We reject these contentions for the following reasons:

At all pertinent times, §§ 2957 and 2965 of the California Civil Code provided:

"§ 2957. [Requisites to validity.] A mortgage of personal property or crops is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, unless * * *

"4. The mortgage, if of personal property other than crops growing or to be grown or animate personal property, is recorded in the office of the recorder of the county where the property mortgaged is located at the time the mortgage is executed, and also in the county to which such property is thereafter removed, and also in the county where the mortgagor resides at the time the mortgage

8. The evidence received on March 9, 1953, consisted of the "stipulated statement" mentioned in footnote 1 and the documents attached to the "stipulated statement."

9. The evidence received on August 25, 1953, consisted of the stipulation mentioned in footnote 5 and the documents

(copies of loss payable clauses) attached to the stipulation.

10. No review was sought by appellee or by any of the insurance companies.

11. The affirmance of that part of the referee's order which required the insurance companies to pay the proceeds of the policies to appellee is not complained of.

is executed; provided that in case the mortgagor is a nonresident of this State, the recordation of the mortgage in the county where the property is located at the time the mortgage is executed and also in the county to which such property is thereafter removed shall constitute compliance with the provisions of this section; * * *."

"§ 2965. [Mortgaged personal property, effect of removal.] When personal property mortgaged (other than animate personal property mortgaged by a resident of this State, and motor vehicles and other vehicles defined in and the mortgaging of which are regulated by the California Vehicle Act), is removed from the county in which it is situated, the lien of the mortgage shall not be affected thereby for thirty days, after such removal; but, after the expiration of such thirty days, said property mortgaged is exempted from the operation of the mortgage, except as between the parties thereto, until either:

"1. The mortgagee causes the mortgage to be recorded in the county to which the property has been removed; or

"2. The mortgagee takes possession of the property as prescribed in the next section."

At all pertinent times, 11 U.S.C.A. § 110, sub. c, provided: " * * * The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy,[12] shall be deemed vested as of such date with all the rights, reme-

dies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

In this case, the mortgage was of personal property other than crops or animate personal property or vehicles mentioned in § 2965. As indicated above, the mortgage was executed on August 16, 1948, in Lewis County, Washington, by Dore and Dore's wife, both of whom were at that time residents of Lewis County, and the mortgaged property was at that time located in Lewis County. We assume, without deciding, that the mortgage was valid when executed and so long as the mortgaged property remained in Lewis County.

However, as indicated above, the mortgaged property was, on or before April 21, 1950, removed to Humboldt County, California, where it remained until destroyed. The 30-day period mentioned in § 2965 expired on or before May 21, 1950. The mortgage was never recorded in Humboldt County, nor did appellant (the mortgagee) take possession of the mortgaged property, nor does it appear that any creditor of Dore other than appellant had any actual notice of the mortgage. Therefore, from and after May 21, 1950, as between appellant and appellee, the mortgage was void, and the mortgaged property was exempted from the operation thereof.[13]

Since, as between appellant and appellee, the mortgage was void from and after May 21, 1950, it did not, as between appellant and appellee, constitute an insurable interest in the mortgaged property on May 16, 1951, or on October 6, 1951. Therefore, as regards the note claim, appellant was merely an unsecured creditor and, though named as loss payee, had no more right to the proceeds of the

---

12. In this case, the date of bankruptcy was March 19, 1952—the date when the petition was filed. See 11 U.S.C.A. § 1(13).

13. See California Civil Code, §§ 2957 and 2965, supra; 11 U.S.C.A. § 110, sub. c, supra; National Bank of Bakersfield v.

Moore, 9 Cir., 247 F. 913; Bank of America National Trust & Savings Ass'n v. Sampsell, 9 Cir., 114 F.2d 211; England v. Moore Equipment Co., D.C.N.D.Cal., 94 F.Supp. 532, affirmed in Moore Equipment Co. v. England, 9 Cir., 185 F.2d 1019. See also Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133.

policies than he would have had if not so named.[14]

## II.

As indicated above, the log boss was covered by the policies and was destroyed by fire. The log boss claim was for $4,000, appellant claiming that he was the owner of the log boss at the time of its destruction; that its reasonable value at that time was $4,000; and that he was therefore entitled to have the log boss claim allowed and paid out of the proceeds of the policies.

We first consider appellant's claim of ownership; for, unless he was the owner of the log boss at the time of its destruction, the log boss claim was properly disallowed.[15]

Appellant's claim of ownership was based on the bill of sale whereby Schurman, on November 13, 1950, pretended to sell the log boss to appellant. It had no other basis. As we have heretofore shown, appellant got nothing by the bill of sale. We therefore hold that he never was the owner of the log boss.

The referee did not, nor did the District Court, find that appellant was the owner of the log boss. Instead, the referee found that appellant was not the owner, and the District Court impliedly approved the finding. The finding was supported by evidence,[16] was not clearly erroneous and is accepted by us as correct.

It is true that on November 13, 1950, after the pretended sale of the log boss to appellant, appellant and Dore executed an agreement whereby appellant pretended to lease the log boss to Dore and the partnership[17] for a rental of $100 a month.[18] That, however, is immaterial. Appellant could not acquire title to the log boss by pretending to lease it. Nor is it material, if true, that Dore and the partnership were estopped by the agreement from disputing appellant's pretended title. The controversy here, it should be remembered, was not and is not a controversy between appellant and Dore or between appellant and the partnership, but was and is a controversy between appellant and appellee. Obviously, appellee was not estopped.

There is no merit in the suggestion that the bill of sale constituted a mortgage on the log boss or in the suggestion that it constituted an assignment of Schurman's rights under the conditional sales contract.[19] The bill of sale did not purport to be, and obviously was not, a mortgage or an assignment. Furthermore, as indicated above, the bill of sale was executed and delivered by Schurman after the payment of the $1,830.84 to Schurman, which is to say, after title to the log boss had passed to the partnership and after Schurman's rights under the conditional sales contract had terminated.

We conclude that the note claim was properly allowed as an unsecured claim and disallowed as a secured claim, and that the log boss claim was properly disallowed.

Judgment affirmed.

---

14. See 44 C.J.S., Insurance, § 185, p. 881; 46 C.J.S., Insurance, § 1151, p. 34.

15. Apart from his claim of ownership, appellant, in his "proof of claim," did not assert or claim to have had, at any time, any right, title or interest in or to the log boss.

16. The evidence showed the facts to be as we have stated them.

17. The original agreement is attached to the "stipulated statement" mentioned in footnote 1 and is part of the record on appeal. The transcript filed by appellant's counsel does not contain the agreement or any copy of it.

18. The probable purpose of the pretended lease was to enable appellant to obtain, in the form of "rent," repayment of the $1,830.84 which he had paid Schurman, and which had inured to the benefit of the partnership.

19. These suggestions are afterthoughts. Appellant's "proof of claim" clearly showed that the log boss claim was made by appellant, not as a mortgagee or assignee, but as the alleged owner of the log boss.