**In re Edward E. SNOW, Debtor.**

**Bankruptcy No. 281–02254–D–11.**

United States Bankruptcy Court, E. D. California.

July 13, 1982.

---

Thomas McCampbell, Chico, Cal., for trustee.

Byron Lee Lynch, Redding, Cal., for debtor.

---

## MEMORANDUM OPINION AND DECISION

LOREN S. DAHL, Bankruptcy Judge.

### Statement of the Facts

On June 22, 1981, EDWARD E. SNOW (Debtor) filed a voluntary petition for relief in pro per pursuant to Chapter 7 of the Bankruptcy Code. In his Schedule B–4 the Debtor claimed the following exemptions: A homestead exemption in his residence pursuant to "CCP 1260" (sic) in the amount of $40,000.00, an exemption for household furnishings and supplies pursuant to CCP 690.1 in the amount of $1,500.00, and an exemption in wearing apparel pursuant to CCP 690.1 in the amount of $200.00.

On the date that the Debtor filed his voluntary petition, the Debtor had not recorded a declaration of homestead in the county where the residence was located. No timely objections to the Debtor's claims of exemption were filed by any interested parties, including the Trustee in Bankruptcy, STANLEY E. SILVA (Trustee).

On September 22, 1981, a fire completely destroyed the subject residence and all the contents therein. On the date of the fire, the residence and its contents were covered by a contract of insurance with Allstate Insurance Company Policy Form Number AU 404. Allstate has not contested its obligation to perform under the contract of insurance. Pursuant to the contract of insurance, Allstate has performed the following: it has paid $48,000.00 for destruction of the residence by a payment of $37,910.74 to Humboldt Savings and Loan Association, the loss payee under the contract of insurance, and the balance of $10,089.26 to the Trustee. Further, Allstate has paid $4,367.91 to the Debtor as a living expense. Finally, Allstate has agreed that $19,834.00 is the amount of its liability under the insurance contract for the contents destroyed in the dwelling house. It has paid $1,000.00 to the Debtor and it retains $18,834.00 for dispersal upon order of this Court for the destruction of the contents of the residence.

On February 1, 1982, the Debtor filed an application with this Court requesting that the Trustee be ordered to abandon the $10,089.00 paid to him by Allstate. In addition the application requests that Allstate be ordered to turn over to the Debtor the $18,834.00 it holds for dispersal.

On February 3, 1982, the Debtor filed an amendment to his Schedule B–4 claim of exemptions. The amendment attempts to change the Debtor's claim of homestead exemption to the amount of $45,000.00 pursuant to CCP 690.31. In addition, the amendment attempts to change the amount of the claim of exemption in the household

furnishings and supplies from $1,500.00 to $19,834.00, the amount of the insurance proceeds.

On March 3, 1982, the Trustee filed a written objection to the Debtor's application to abandon property. Then, on March 17, 1982, the Trustee filed a written objection to the Debtor's amended claim of exemptions.

On March 8, 1982, a hearing was held before this Court on the Debtor's application and the Trustee's objections and, the Court having heard oral arguments and received the written briefs of the parties, the matter was taken under submission.

## Issues

The first issue is whether or not the Debtor has "seasonably" filed his amendment to his claims of exemption in his Schedule B–4.

The second issue is whether or not the Trustee is entitled to the amount of the insurance proceeds which exceed the amount of the Debtor's original claim of exemption in the household furnishings and supplies and wearing apparel (assuming that the Debtor's amendment is not allowed).

## Analysis

■ Bankruptcy Rule 110 provides that "a voluntary petition, schedule, or statement of affairs may be amended as a matter of course at any time before the case is closed." This language is very liberal and would permit the amendment of an exemption Schedule B–4 at any time before the case is closed. However, bankruptcy court decisions have recognized the procedural and practical problems of case administration that a liberal application of this rule to claims of exemption would create. Therefore, bankruptcy courts have consistently held that an amendment to a claim of exemption in a Schedule B–4 must be seasonably offered before adverse interests of creditors have attached. *In re Duncan*, 7 B.R. 484 (Bkrtcy.); *In re Lowitz*, 3 B.R. 150 (Bkrtcy.); *In re Shapkin*, 16 B.R. 26 (Bkrtcy.).

■ In the instant case, the Debtor filed his amendment to his Schedule B–4 claim of exemptions on February 3, 1982. This filing took place more than seven months after the Debtor had filed his original Schedule B–4 with his voluntary petition on June 22, 1981. During this seven-month period in administering the estate, the Trustee has acquired assets for the bankruptcy estate, including the $10,089.26 draft from Allstate. Creditors' rights have attached to these assets because no valid exemption had been claimed during this period. To allow a debtor to amend his claim of exemptions at this late date would clearly be inequitable and would hinder the diligent administration of the bankruptcy estate by the Trustee. Because to allow the Debtor to amend his claim of exemptions at this late date would have an adverse impact on creditors whose rights have attached to the assets of the bankruptcy estate and because a late amendment to the Debtor's claim of exemptions would hinder the diligent administration of the bankruptcy estate by the Trustee, the amendment is not seasonable and, therefore, not allowed.

Since the Debtor's amendment to his Schedule B–4 has not been allowed, the rights of the Debtor and the Trustee in the insurance proceeds depend on the validity of the Debtor's original claim of exemptions in his Schedule B–4.

■ The Debtor's original claim of homestead exemption was made pursuant to "CCP 1260" in the amount of $40,000.00. The cite of "CCP 1260" was erroneous. The California state homestead exemptions are found in CCP Section 690.31 and in CC Section 1260. To give meaning to the Debtor's claim of homestead exemption, it must be read as being made pursuant to CCP Section 690.31 or CC Section 1260. Because the number 1260 is more specific than the lettering CCP, this Court interprets the exemption to be claimed pursuant to CC Section 1260.

The Debtor has not complied with the applicable provisions of CC Section 1260 because he had not recorded a declaration of homestead in the county where the residence was located before the date that he

filed his voluntary petition in bankruptcy. The Debtor's original claim of homestead exemption is therefore invalid and may not be asserted against the Trustee to recover the insurance proceeds for destruction of the residence. Therefore, the Court directs the Trustee to retain the funds from Allstate in the amount of $10,089.00 for use in making dividends to creditors and for payment of administrative expenses. Furthermore, the lot on which the subject residence once stood, because it is not an exempt asset of the Debtor, is property of the bankruptcy estate pursuant to 11 U.S.C. Section 541.

■ The Debtor's original claim of exemption in his household furnishings and supplies was made pursuant to CCP Section 690.31 in the amount of $1,500.00. No timely objection to this claim of exemption was made by any interested party and, therefore, pursuant to 11 U.S.C. Section 522(b)(1), this property is deemed to be exempt.

In his objection to the Debtor's application, the Trustee asserts that the Debtor is bound to the amount claimed in his original exemption schedule and any excess proceeds over this $1,500.00 amount should be drawn into the bankruptcy estate. The Trustee's assertion ignores the legal effect of an allowed exemption. Assets properly exempted by a debtor are withdrawn from the bankruptcy estate and title to those exempt assets is vested in the debtor to carry into his fresh start. The bankruptcy estate has no interest whatsoever in exempt assets.

In the instant case, the contents of the residence of the Debtor were properly exempted and title had vested in the Debtor before the fire destroyed them. The bankruptcy estate had no interest in those exempt assets. Thus, when these contents were destroyed by fire, the Debtor was the sole owner of the insurance proceeds covering the contents. If the Debtor had chosen to sell the contents after July 29, 1982 (the deadline for filing objections to Debtor's claim of exemptions), certainly the Trustee would have no valid claim to the sales proceeds, regardless of amount.

This analysis is in line with the practical considerations of the filing of a bankruptcy schedule by a debtor. On the date that a debtor signs his schedules, the bankruptcy rules require that he value his assets at their present market value. He does not value them at their replacement cost because to do so would be contrary to the rules and would give the assets an inflated value. Thus, to hold that the Debtor should have estimated the replacement cost of his exempt assets in case these assets were to be destroyed by fire would be to penalize an honest debtor. In this case, it is to the Debtor's credit that he insured the contents of his dwelling house against loss for replacement rather than market value. Should he elect to completely replace the contents, all of the insurance proceeds will be presumably exhausted. Except for having newer contents, he will have no more nor less than before the fire. Pursuant to the above analysis, the Debtor is entitled to the entire amount of the insurance proceeds for the loss of the contents of his residence.

This Memorandum Opinion and Decision shall constitute Findings of Fact and Conclusions of Law. The attorney for the Trustee shall prepare and submit an Order consistent herewith.