In the Matter of Johnnie Marion RUTHERFORD, Debtor.

Thomas L. WILLIAMS, trustee in bankruptcy, Plaintiff,

v.

Johnnie Marion RUTHERFORD, Phil Couch, Tax Collector, Estate of Audry F. Rutherford, Ben Balke and Letha Balke, Defendants.

Bankruptcy No. 84–02395–SW.
Adv. No. 86–0243–SW.

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

Sept. 29, 1986.

See also, Bkrtcy., 54 B.R. 784.

---

Thomas L. Williams of Roberts, Fleischaker & Scott, Joplin, Mo., for plaintiff.

Stephen B. Strayer, Kansas City, Mo., for Johnnie M. Rutherford.

Douglas Crandall, Carthage, Mo., for Estate of Audrey Rutherford, Phil Couch, Tax Collector, no atty. on record.

William G. McCaffree, Nevada, Mo., for defendants Blake.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL DECREE AND JUDGMENT DIRECTING TRUSTEE TO PAY $13,008 PLUS ANY INTEREST EARNED THEREIN TO JOHNNIE MARION RUTHERFORD AND $45,000 PLUS ANY INTEREST EARNED THEREIN TO THE ESTATE OF AUDRY F. RUTHERFORD

DENNIS J. STEWART, Chief Judge.

This action to determine the validity and priority of liens came on before the court for hearing of its merits on September 12, 1986, in Kansas City, Missouri, at which time all parties appeared before the court by respective counsel. The parties then orally stipulated the material facts as follows:

The debtor filed his petition for relief under chapter 11 of the Bankruptcy Code on July 27, 1984. At the time of filing, he claimed an exemption for household goods having a value of $565.00. The chapter 11 proceedings were converted to chapter 7 proceedings on September 7, 1985. Thereafter, on December 24, 1985, debtor's farm residence was consumed by fire. The trustee in bankruptcy, on account of the fire casualty, received two separate insurance benefit checks, one from the American Family Insurance Group in the sum of $40,008 ($30,000 for the dwelling itself and $10,008 for the household furnishings) and one from the Vernon County Mutual Insurance Company in the sum of $18,000 ($15,000 for destruction of the dwelling and $3,000 for the household furnishings). The defendant Estate of Audry F. Rutherford held a valid and perfected mortgage on the real property destroyed. The balance due to that entity exceeded $200,000 as of the date of bankruptcy. The defendants Balke had a second mortgage, on which a balance in excess of $40,000 was due. The debtor had agreed in the first mortgage instrument to make the Estate of Audry F. Rutherford the loss payee of the American Family policy, but did not do so. The Balkes, however, were made loss payees of the Vernon County Mutual policy, despite the fact that, according to the facts orally stipulated by the parties, the Balkes' balance

due is adequately protected by collateralization in other portions of the debtor's real property.

The various claims of the parties to the insurance proceeds may be summarized as follows:

*The $30,000 from American Family Insurance Group attributable to the dwelling*

(1) The trustee in bankruptcy claims the $30,000 proceeds of the American Family policy on the ground that his claim as a hypothetical lien creditor under § 544(a) of the Bankruptcy Code is superior to the equitable lien claimed by the Estate of Audry F. Rutherford on the same proceeds.

(2) The Estate of Audry F. Rutherford claims the $30,000 from American Family on the basis of an equitable lien claimed to arise because of the unfulfilled promise of the debtor to make them loss-payee of the policy.

*The $15,000 from Vernon County Mutual Insurance Company attributable to the dwelling*

(1) The Estate of Audry F. Rutherford claims the $15,000 on the basis of an equitable lien claimed to arise because of the unfulfilled promise of the debtor to make them loss-payee of the policy.

(2) The Balkes claim these proceeds as named loss-payee of the policy.

(3) The trustee claims precedence over any equitable lien claim of the Estate of Audry F. Rutherford on the grounds of the priority of his avoiding power under § 544(a) *supra.*

*The $13,008 from both policies attributable to household goods*

(1) The debtor claims all as being insurance for replacement of his claimed exemptions on the authority of *In re Snow*, 21 B.R. 598, 601 (E.D.Cal.1982), which pertinently holds as follows:

"In his objection to the Debtor's application, the Trustee asserts that the Debtor is bound to the amount claimed in his original exemption schedule and any excess proceeds over this $1,500.00 amount should be drawn into the bankruptcy estate. The Trustee's assertion ignores the legal effect of an allowed exemption. Assets properly exempted by a debtor are withdrawn from the bankruptcy estate and title to those exempt assets is vested in the debtor to carry into his fresh start. The bankruptcy estate has no interest whatsoever in exempt assets.

"In the instant case, the contents of the residence of the Debtor were properly exempted and title had vested in the Debtor before the fire destroyed them. The bankruptcy estate had no interest in those exempt assets. Thus, when these contents were destroyed by fire, the Debtor was the sole owner of the insurance proceeds covering the contents. If the Debtor had chosen to sell the contents after July 29, 1982 (the deadline for filing objections to Debtor's claim of exemptions), certainly the Trustee would have no valid claim to the sales proceeds, regardless of amount."

(2) The trustee claims all but $565 which he contends is all that the debtor has claimed or can claim as exempt and that the other monies must necessarily be attributed to property other than exemptions and to which the trustee must necessarily succeed under § 541 of the Bankruptcy Code.

### Conclusions of Law

The parties have been permitted orally to argue the legal bases for each of their contentions in the hearing of September 12, 1986. In order to satisfy itself of the applicability of the seemingly controlling authority, the court has briefly taken this action under advisement. It appears that the authorities presented by the parties control the relevant issue. The court therefore concludes as follows with respect to the various claims, by applying the authorities cited to the facts stipulated and agreed to by the parties.

*The $13,008 from both policies attributable to household goods*

■ The citation of *In re Snow, supra*, by debtor's counsel has not been matched

by any contradictory citation by any competing counsel. According to the court's brief research, it appears to be the controlling authority on the issue. Judgment will therefore be entered in accordance with the reasoning of *In re Snow, supra,* awarding this $13,008 in policy proceeds to the debtor, Johnnie Marion Rutherford.[1]

### The $30,000 proceeds of the American Family Insurance Group Policy attributable to the dwelling

■ It is the position of the trustee in bankruptcy, as observed above, that the Rutherford estate failed to perfect any equitable lien which it may have in these proceeds by failure to file a financing statement as required by the Uniform Commercial Code of Missouri. The trustee cites and relies on *Chapman v. England,* 231 F.2d 606, 610 (9th Cir.1956). The court in that case, however, appears to have predicated its result on imperfection of the loss-payee's security interest in the insured property rather than upon an independent duty to perfect a security interest in the insurance proceeds themselves. Because the "mortgage was void," therefore, as unperfected, "it did not ... constitute an insurable interest in the mortgaged property [and] ... appellant was merely an unsecured creditor and, though named as loss payee, had no more right to the proceeds of the policies than he would have had if not so named." 231 F.2d at 610–11. The authority cited and relied on by the Rutherford Estate is more applicable and convincing. It appears not only .to define an enforceable equitable lien in terms of the facts at bar, but also to hold that such an equitable lien has a priority perfected status. See *Calvert Fire Ins. Co. v. Environs Development Corp.,* 601 F.2d 851, 858 (5th Cir.1979), to the following effect:

> "[See] *In re San Joaquin Valley Packing Co.,* 295 F. 311 (9th Cir.1924) ...
> [W]here the owner of real estate insures his interest therein against loss by fire, the holder of a mechanics lien

on the property has no claim upon the proceeds of the insurance money, *unless by contract the owner was obligated to insure for his benefit ... The same is true of the relation between. mortgagor and mortgagee,* landlord and tenant, lessor and lessee. [Emphasis supplied.]

*In re San Joaquin Valley Packing Co., supra.,* at 313.

The underlying rationale for the exception to the general rule above stated would seem to be that where a claimant had an insurable interest in property and the insured made a valid and binding promise to insure the claimant's interest but instead merely obtained insurance for the insured's own benefit, equity will intervene to prevent the claimant's being injured by the breached promise and to prevent the unjust enrichment of the wrongdoer. If O'Neal can prove that Lexington made a valid and binding promise to provide insurance to protect an insurable interest owned by O'Neal, then an equitable lien in the insurance arises in O'Neal's favor."

According to the stipulation of the facts in this action, the mortgage instrument clearly provides for the loss-payee status of the Rutherford Estate in an insurance policy. It thus meets the requirement that "[a]n intention to create such a charge [must] clearly appear from the language and the attendant circumstances." *Cherno v. Dutch American Corp.,* 353 F.2d 147, 153 (2d Cir.1965); *In re O.P.M. Leasing Services, Inc.,* 23 B.R. 104, 119 (Bkrtcy.S.D.N.Y. 1982), and cases there cited. And, further, even if the interest in insurance must be separately perfected (a proposition for which, as noted above, no squarely applicable authority has been cited), such perfection would appear to be excused—as it is in the case of an ordinary equitable lien— "where a secured creditor is prevented from perfecting its interest by an uncooperative creditor" and "where all available

---

**1.** The fact that the fire in this case took place after the date of bankruptcy (and therefore after the date when the trustee became the successor in interest of the debtor) provides no material distinction from the *Snow* case. For the fire took place also after the household goods had been effectively claimed as exempt by the debtor.

means of perfecting a legal lien were ... employed by the would-be secured creditor." *In re O.P.M. Leasing Co., supra,* at 119, and cases there cited. That is the case at bar, according to the facts stipulated by the parties, in which the debtor actively prevented the estate of his former wife from even having any insurance to which a financing statement might have been relevant. According to these considerations, therefore, this court concludes that these proceeds must be awarded to the estate of Audry F. Rutherford.

### The $15,000 from Vernon County Mutual Insurance Company attributable to the dwelling

With respect to these proceeds, the defendants Balke predicate their claim on their being loss-payees of the Vernon County policy. Counsel for the trustee argues persuasively that the insurance "does not run with the land," *Estes v. Great American Insurance Co. of New York,* 112 S.W.2d 153, 157 (Mo.App.1938), and that the doctrine of *Calvert Fire Ins. Co. v. Environs Development Corp., supra,* "cannot be applied to deprive the holder of a second mortgage of the right to proceeds of a fire policy payable to it," citing 46 C.J.S. *Insurance* § 11476, p. 31, n. 41. There is a more basic respect, however, in which, according to the parties' stipulation of facts, the *Calvert* decision is applicable. For the parties have stipulated that the Balkes are otherwise fully protected by the value of other properties of the debtor in which they have cross collateralized their security interest. Now that these former chapter 11 proceedings have been converted to straight liquidation proceedings under chapter 7, the Balkes should shortly receive the value of those other properties, if they have in fact not already received that value. This court therefore holds that the following principles of the *Calvert* decisions, *supra,* to be applicable:

"Where a fire loss occurs and a loss-payee is thus vested with rights under the insurance policy, subsequent partial or full extinguishment of the debt giving rise to the insurable interest will reduce the loss-payee's interest in the proceeds to the extent the debt has been satisfied ... This rule is intended to prevent a creditor from receiving a double payment. The creditor's interest in the insurance proceeds is recognized as security for the payment of the debt. The insurance is an alternative source of payment and once the debt is paid by some other means any right to the insurance is thereby extinguished. Equity requires that subsequent events such as payment of the underlying debt not be ignored when the court distributes the insurance proceeds."

Therefore, the Balkes' claim to these proceeds should not be honored. And the trustee's claim, for the reasons stated in respect of the $30,000 fund, *supra,* cannot prevail against the claim of the Estate of Audry F. Rutherford. The Rutherford Estate must therefore be awarded these funds as well.

Accordingly, for the foregoing reasons, it is hereby,

ORDERED, ADJUDGED AND DE-CREED that the trustee pay the $13,008 abovementioned, plus any interest actually earned thereon, to the debtor Johnnie Marion Rutherford, and that he pay the other $45,000 of insurance proceeds, plus any interest actually earned thereon, to the Estate of Audry F. Rutherford.

ORDER ALTERING AND AMENDING JUDGMENT OF SEPTEMBER 29, 1986, SO AS TO AWARD THE $15,000 FROM VERNON COUNTY MUTUAL INSURANCE COMPANY ATTRIBUT-ABLE TO THE DWELLING TO BEN BALKE AND LETHA BALKE RATH-ER THAN TO THE ESTATE OF AU-DRY F. RUTHERFORD

■ On September 29, 1986, this court issued its written findings of fact, conclusions of law and final judgment which, *inter alia,* awarded $15,000 in insurance proceeds from the debtor's policy with the Vernon County Mutual Insurance Company, attributable to the debtor's dwelling, to the Estate of Audry F. Rutherford. This was done even though the defendants Balke were the loss payees of the insur-

ance policy, while the Estate of Audry F. Rutherford, while holding the prior mortgage, had only the promise of the debtor in the mortgage instrument to purchase insurance of which it would be the loss payee and that promise had not been kept.

The award thus made, however, had for its basis the court's understanding of the oral stipulation of facts which the parties had entered into on the date of the hearing to the effect that the Balkes' mortgage was adequately protected by cross-collateralization in other tracts of real property. The court materially found that "the parties have stipulated that the Balkes are otherwise fully protected by the value of other properties of the debtor in which they have cross collateralized their security interest." (Page 669.) Accordingly, under seemingly pertinent legal principles which were designed to prevent double payment of the same loss, the court directed that the award be paid to the first mortgagee, the Estate of Audry F. Rutherford, rather than to the Balkes.

The defendants Balke timely moved to alter or amend the judgment in this respect on October 2, 1986, stating that the parties had, in reality, orally stipulated that the Balkes' mortgage was "totally unprotected"; that "(t)he confusion may have arisen because Balke had three loans. Loans # 1 and # 2 were protected, but Loan # 3, which is the only loan affecting the resi-

dence, is second in priority to the 'blanket' mortgage of the Rutherford Estate."

Consequently, this court issued its written order on October 3, 1986, directing the parties in interest to show cause in writing within 15 days why the motion to alter or amend the judgment of September 29, 1986, in this respect should not be granted. The Estate of Audry F. Rutherford, in its response to the order of October 3, 1986, does not deny the Balkes' material factual assertion to the effect that the Balkes' relevant mortgage was protected only by the insurance proceeds *sub judice*. The Estate of Audry F. Rutherford, rather, requests that the court, on the basis of newly-raised equitable considerations (to the effect that the Estate of Audry F. Rutherford has, in total, lost more as a result of the liquidation process than the Balkes and that it was "unjust enrichment" to award the debtor the sum of $13,008, which admittedly exceeded his actual loss on the household furnishings) make orders which would offer a greater degree of protection to it. But the clarity of the applicable law precludes the court's employing the equitable considerations as desired. The case law previously adverted to demands that the Balkes receive the $15,000 in proceeds attributable to the dwelling and that the debtor receive the $13,008 in proceeds attributable to the household furnishings.[1]

---

1. "Regardless of whether or not the policy is made payable to the mortgagee, if it is procured by the mortgagor under a covenant or binding agreement to insure for the mortgagee's benefit, the proceeds recovered by the mortgagor are held in trust for the mortgagee, who is deemed to have an equitable lien on the proceeds of the insurance for the satisfaction of his mortgage. Although an intent to fulfill such a covenant has been held a prerequisite to the establishment of an equitable lien in favor of the mortgagee, it has generally been held, except as against an innocent purchaser or assignee for value, *or one for whose benefit the policy is directly taken,* that the mortgagee has an equitable lien on the proceeds of a policy issued to the mortgagor, notwithstanding the policy is not made payable to the mortgagee ..." 46 C.J.S. *Insurance* section 1147b, p. 31. "Of course, it is urged here that we are construing a covenant in a mortgage under which the mortgagor bound himself to insure, but we do not think that the stipulation in that form could have the effect of changing

the nature of the insurance contract and transform it from a purely personal one to one which ran with the property. The most that the mortgagee is entitled to under such an agreement, as we read the authorities we can find on the subject, is an equitable lien upon the proceeds of the policy to the extent of his interest in the property. This lien he most probably could successfully assert against the proceeds of a policy payable directly to the mortgagor. But where, in a case like this, the policy contains a rider under which the loss, if any, is made payable to another party specifically designated by name, the rights of that party to the proceeds, even though he be the holder of a second mortgage, cannot, in our opinion, be defeated if those provisions of law making an insurance contract strictly a personal contract which in no sense runs with the property mean anything." *Hartford Fire Ins. Co. v. Landreneau,* 140 So. 52, 54, 55 (La.App.1932). "Appellant also argues that the insurance having been payable to Devonshire (the second mortgagee) 'as his inter-

Accordingly, it is hereby

ORDERED that the court's judgment of September 29, 1986, be, and it is hereby, altered and amended so as to provide that the defendants Ben Balke and Letha Balke shall receive the $15,000 in insurance proceeds from the Vernon County Mutual Insurance Company attributable to the dwelling. It is hereby so adjudged and decreed. In all other respects, the judgment of September 29, 1986, shall remain the same.

## ORDER DISMISSING APPEAL

On examination of the files and records in this case, it has been determined that the appeal must be dismissed for failure of the appellant to file the documents required by the Bankruptcy Rules. Appellant has failed to file (1) a timely notice of appeal and (2) a designation of record and statement of issues on appeal. The files and records in this action show that the court initially issued its judgment on September 29, 1986. The defendants Balke filed a motion to alter or amend judgment on October 2, 1986. Appellant's notice of appeal was filed on October 7, 1986, during the pendency of the motion to alter or amend judgment. On October 29, 1986, the court issued its written order ruling on the motion to alter or amend judgment. Appellant has not filed a new notice of appeal since that time. Such a filing is necessary, within 10 days of October 29, 1986, as a prerequisite to the viability of appellant's appeal. "If a timely motion is filed in the bankruptcy court by any party ... to amend or make additional findings of fact, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion. *A notice of appeal filed before the disposition of any of the above motions shall have no effect; a new notice of appeal must be filed.*" Rule 8002(b) of the Bankruptcy Rules. (Emphasis added.)

Second, Rule 8006 requires that, "[w]ithin 10 days after filing the notice of appeal ... appellant shall file with the clerk of the bankruptcy court and serve on the appellee a designation of items to be included in the record on appeal and a statement of the issues to be presented." Neither has this document been filed.

Under the General Order promulgated by the district court on October 30, 1986, "the judges of the Bankruptcy Court may hereafter dismiss appeals from decisions of the Bankruptcy Court filed in this court for failure of any of the parties thereto to perfect on appeal by not filing appropriate documents with the Clerk of Court as provided in the Bankruptcy Rules or Sections of Title 28, U.S.C.A."

Accordingly, pursuant to the authority thereby granted, it is hereby

ORDERED that the within appeal be, and it is hereby, dismissed.

---

est might appear,' and his interest being solely that of a second mortgagee, any rights he had under the insurance policy would be subject to the first mortgage of appellant. We cannot so consider. Devonshire's loan was for $950 and the insurance was for $800. His interest was to the limit of the insurance policy in his favor, as measured by the amount of the loan." *Fire-*

man's Fund Ins. Co. v. Smith, 16 P.2d 202, 203 (Wash.1932). On the issue of the applicability of *In re Snow*, 21 B.R. 598 (Bkrtcy.E.D.Cal. 1982), to the $13,008 proceeds applicable to the household effects, see this court's order of September 29, 1986, "treating 'plaintiff's post-trial brief' as a motion to alter or amend judgment and denying it as so treated."