In re Gregory F. **GAYLOR** and Diana
L. Gaylor, Debtors.

**FIRST OF AMERICA BANK, Plaintiff,**

v.

Gregory F. **GAYLOR** and Diana L.
Gaylor, Defendants.

**Bankruptcy No. 90–09271.
Adv. No. 90–9069.**

United States Bankruptcy Court,
E.D. Michigan, N.D.

Jan. 25, 1991.

Marshall D. Schultz, James Thomas, for plaintiff.

Jack A. Weinstein, for defendants.

## MEMORANDUM OPINION ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

ARTHUR J. SPECTOR, Bankruptcy Judge.

The issue here is whether a chapter 7 debtor can force a creditor holding a mortgage on real property of the estate to accept less than the full balance owing when the debtor eventually sells the property after the case is closed. To our knowledge, this is the first Chapter 7 "strip down" ever attempted in this district.

Gregory and Diana Gaylor ("Debtors") filed their joint voluntary petition for relief on March 23, 1990. First of America Bank ("Bank") brought an action under 11 U.S.C. § 523(c) for a determination that a particular debt owed to it was nondischargeable. The Debtors filed a counterclaim alleging that the value of a home in Clarkston, Michigan, which they formerly occupied, was worth $163,000. They further alleged the existence of a first mortgage on this property in the amount of $114,633; a second mortgage in the amount of $55,833; and a third mortgage to the Bank with a balance of $45,200. The Debtors requested that the Court "determine under 11 U.S.C. section 506 what portion of Plaintiff's

mortgage is secured." The Bank responded with a motion to dismiss the counterclaim for failure to state a claim upon which relief can be granted. Bankruptcy Rule 7012(b), incorporating F.R.Civ.P. 12(b)(6).

■ Since determining the extent to which the Bank's claim is secured by the property's value is, without more, a pointless endeavor, we assume that what the Debtors are really seeking is avoidance of the unsecured portion of the Bank's lien pursuant to § 506(d).[1] As the district court clearly has jurisdiction over this dispute, 28 U.S.C. § 1334, which is a core proceeding, 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O), and since the district court has referred its bankruptcy jurisdiction to the bankruptcy judges of this district, our conclusions of law pursuant to Bankruptcy Rule 7052 will result in an order dismissing the counterclaim. 28 U.S.C. § 157(a), (b)(1).

In deciding the Bank's motion to dismiss, "we accept as true the factual allegations" contained in the Debtors' counterclaim. *Anspec Company v. Johnson Controls,* 922 F.2d 1240, 1243 (6th Cir.1991). Dismissal is appropriate only if "it appears beyond doubt" that the Debtors "can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). For the reasons which follow, we conclude that the "strip down" relief which the Debtors seek is unavailable in chapter 7, and we will accordingly dismiss the Debtors' counterclaim.

Relying primarily on *In re Dewsnup,* 87 B.R. 676, 17 B.C.D. 1139, 18 C.B.C.2d 1459 (Bankr.D.Utah 1988), *aff'd,* 908 F.2d 588 (10th Cir.1990) and *In re Maitland,* 61 B.R. 130, 14 C.B.C.2d 1255 (Bankr.E.D.Va.1986), the Bank argues that a debtor may not utilize § 506 to strip down a mortgage on property in which the estate no longer has an interest. In contrast to those cases, however, the trustee here has not aban-

---

1. The fact that the Debtors' legal theory may have been mischaracterized is not sufficient to support dismissal under F.R.Civ.P. 12(b)(6). *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 604 (5th Cir.1981). In any event, the Debtors indicated during argument that this was the relief they were seeking.

doned the property. We must therefore first determine whether the Bank is nonetheless correct in its assertion that the estate has no interest in the property.

■ With exceptions not relevant here, the filing of a petition in bankruptcy creates an estate consisting of "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Under the federal exemption scheme elected by the Debtors, however, a debtor may exempt from property of the estate his interest in property identified in § 522(d), subject to the maximum amounts specified therein. If no objection to the claimed exemption is made, then "the property claimed as exempt . . . is exempt." 11 U.S.C. § 522(*l*). Thus, property claimed as exempt originally comprises a part of the bankruptcy estate, but becomes "exempt" if a timely valid objection is not filed. *In re Dembs*, 757 F.2d 777 (6th Cir.1985).

■ In *Seifert v. Selby*, 125 B.R. 174 (E.D.Mich.1989), *recon'n denied*, Mar. 20, 1989, a district judge held that, if no party has timely filed an objection to a claimed exemption, the property in which the exemption is claimed is itself exempted in its entirety, not just the value which the debtor claimed as exempt.[2] Because the Debtors have claimed a $1 exemption in the property in question here, and no party has objected to the exemption, *Seifert* would require us to conclude that the Clarkston property is fully exempted. That being the case, the property would no longer be property of the estate, and the analysis in *Dewsnup* and *Maitland* would be relevant. For the reasons which follow, however, we believe that *Seifert* was wrongly decided.

As with any issue involving statutory construction, we turn first to the wording of the statute in question. *See United States v. Ron Pair Enterprises*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d

290 (1989). The specific provision upon which the Debtors rely for their claimed exemption is § 522(d)(5), which permits each debtor to exempt her "aggregate interest in any property, not to exceed in value $400 plus up to $3,750 of any unused amount of the exemption provided under paragraph (1) of this subsection." 11 U.S.C. § 522(d)(5). Paragraph (1) of that subsection, the homestead exemption, provides in turn that a debtor may exempt her "aggregate interest, not to exceed $7,500 in value" in homestead property. 11 U.S.C. § 522(d)(1).

It bears emphasizing that the foregoing statutory provisions speak in terms of the debtor's "interest" in property which does not *exceed* a particular *value*. The statute therefore seems to contemplate that that portion of the debtor's interest, if any, which exceeds the specified value cannot be claimed as exempt; indeed, to conclude otherwise would render meaningless the value limitations contained in the statute. Thus, the language of the statute itself supports the conclusion that the scope of the debtor's exemption is not necessarily coextensive with the full value of the property in question.

Similarly, the statute's legislative history indicates that the debtor cannot in any event claim an exemption in property to the extent that it is subject to a security interest. The Senate Report explains that "[p]roperty may be exempted even if it is subject to a lien, but only the unencumbered portion of the property is to be counted in computing the 'value' of the property for the purposes of the exemption." S.Rep. No. 95–989, 95th Cong.2d Sess. 76 (1978), 5 U.S.Code Cong. & Admin. News 1978, 5787, 5861–62. The House Judiciary Report provides the following illustration:

Thus, for example, a residence worth $30,000 with a mortgage of $25,000 will

---

**2.** In *Seifert,* the debtors claimed as exempt the maximum allowed under § 522(d)(5) ( [$3,750 + $400] × 2 = $8,300) pertaining to their interest in real estate which they were purchasing on land contract. No party filed a timely objection to the exemption. The trustee subsequently obtained an order from the bankruptcy court au-

thorizing him to sell the property for an amount sufficient to pay the balance due the land contract vendors and satisfy the debtors' exemption, with a small surplus for the estate. The debtors appealed the order, and the district court reversed, holding that the entire asset was exempt, not just the amount claimed as exempt.

be exemptable [sic] to the extent of $5,000. This follows current law. The remaining value of the property will be dealt with in the bankruptcy case as is any interest in property that is subject to a lien.

H.Rep. No. 95–595, 95th Cong., 1st Sess. 360–61 (1977), 5 U.S.Code Cong. & Admin. News 1978, 6316.[3] The "current law" referred to in the House Report is exemplified by *In re Cummings*, 413 F.2d 1281 (10th Cir.1969), *cert. denied*, 397 U.S. 915, 90 S.Ct. 918, 25 L.Ed.2d 95 (1970). In *Cummings*, the court held that, "when mortgaged property is claimed as exempt by a bankrupt, the exemption applies to the equity and not to the specific items of property." 413 F.2d at 1285.

Consistent with pre-Code cases such as *Cummings*, cases decided under the Code have likewise concluded that property cannot be exempted from the estate to the extent it is encumbered by a security interest. *In re Orecchio*, 54 B.R. 685, 687 (Bankr.D.N.J.1985); *In re Morgan*, 6 B.R. 701, 704, 6 B.C.D. 1202 (Bankr.M.D.Tenn. 1980); *see also In re Pebsworth*, 121 B.R. 600 (Bankr.N.D.Okla.1990) ("[S]ince the Debtor has no equity in the mobile home, his claim of exemption [under Oklahoma law] will be denied."). The two major treatises on bankruptcy law are in accord with the foregoing cases. 3 *Collier on Bankruptcy*, ¶¶ 522.10–.11 (15th ed. 1990); 1 *Norton Bankruptcy L. & Prac.* § 26.12.50.

Courts have also consistently held that the debtor's property remains property of the estate to the extent its value exceeds the statutory amount which the debtor is permitted to exempt. *In re Johnson*, 30 B.R. 467, 469 (M.D.Tenn.1983); *In re Ehr*, 116 B.R. 665, 668 (Bankr.E.D.Wis.1988); *In re Wittenwyler*, 62 B.R. 479, 481–82, 15 C.B.C.2d 162 (Bankr.W.D.Wis.1986); *In re Blakely*, 29 B.R. 354, 355 (Bankr.W.D.La. 1983); *In re Upright*, 1 B.R. 694, 702, 5 B.C.D. 1124, 1 C.B.C.2d 229 (Bankr.N.D.N.Y.1979); *see also In re Reich*, 54 B.R. 995, 1003, 13 B.C.D. 953, 13 C.B.C.2d 988

(Bankr.E.D.Mich.1985) (where this Court stated in dictum that the fact that the debtors duly exempted "$15,250 worth of real estate equity ... did not mean that the building itself was no longer estate property"); *In re Smith*, 8 B.R. 375, 379 (Bankr. S.D.Cal.1980) (dictum). The same conclusion is reached by a major bankruptcy treatise. *Norton, supra.*

In a case where the debtor opted for the applicable state law exemptions pursuant to § 522(b), the Sixth Circuit stated that under Ohio law the debtor may "exempt from the bankruptcy proceedings an interest in a residence *in an amount not to exceed $5,000." In re Dixon*, 885 F.2d 327, 329 (6th Cir.1989) (emphasis added). It would therefore seem that our own circuit of the Court of Appeals agrees with the overwhelming weight of authority that an uncontested claim of exemption is effective to exempt only the exemptible value of the property and not the entire asset.

Support for the conclusion that property in which the debtor properly claims an exemption is not necessarily fully exempted is also found in other provisions of the Code and cases decided thereunder. In construing § 522(f), which allows the debtor to avoid certain liens that impair exemptions to which he would otherwise be entitled, cases hold that this right is available to the debtor only to the extent that he holds an interest in the property that is not subject to unavoidable liens. *See In re Simonson*, 758 F.2d 103, 105 (3d Cir.1985) ("Had the property produced at sale proceeds in excess of the consensual liens, ... the debtor would have an exemptible interest in the excess...."); *Fitzgerald v. Davis*, 729 F.2d 306, 308 (4th Cir.1984); *In re Webb*, 48 B.R. 454, 458 (Bankr.E.D.Va.1985) ("[I]t is settled that debtors have no claim to an exemption in property in which the sum of the unavoidable encumbrances exceed the value of the property."); *Beneficial Finance Co. of Virginia v. Franklin*, 26 B.R. 636, 638, 8 C.B.C.2d 388 (W.D.Va. 1983), *vacated and remanded without*

---

**3.** A similar example is found elsewhere in the same report. *See* H.Rep. No. 95–595, 95th Cong. 1st Sess. 381 (1977); 5 U.S.Code Cong. & Admin.News 1978, 6337 ("[I]f a debtor owned a $2,000 car, subject to a $1,200 lien, the debtor could exempt his $800 interest in the car.")

*opinion,* 714 F.2d 127 (4th Cir.1983) (a debtor "can only claim exemptions to the extent of his equity interest in the goods"); *In re Yates,* 13 B.R. 80, 81 (Bankr.E.D.N.C. 1981); *In re Boteler,* 5 B.R. 408, 411, 6 B.C.D. 798 (Bankr.S.D.Ala.1980) ("To be exemptable [sic], the property must be unencumbered to the extent of that interest."); *see also In re Wenande,* 107 B.R. 770, 774, 21 C.B.C.2d 1424 (Bankr.D.Wyo. 1989) ("The amount of entireties property that these joint debtors may exempt out of their estate under § 522(b)(2)(B) is their equity in the entireties property, less the total sum of all joint claims against both debtors.... The entireties property which is not exempt is property of the estate."); *In re Lambert,* 10 B.R. 11, 13, 6 B.C.D. 1124, 3 C.B.C.2d 37 (Bankr.N.D.Ind.1980).

Also relevant is § 326(a), which grants trustees a right to a commission "upon all monies disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." Except in the rare case of a surplus, a debtor is likely to receive money from a trustee only in exoneration of an exemption claimed in property liquidated by the trustee. If the debtor could in effect remove the property entirely from the estate, merely by claiming it as exempt, payments by the trustee to the debtor would be highly unusual, and the limitation contained in § 326(a) would appear to be pointless.

To summarize, we believe that the language of the statute, its legislative history, case law and the leading treatises support the conclusion that a debtor's maximum allowable exemption under § 522(d) is his equity in the property or the applicable statutory ceiling, whichever is less, and that the property in which a debtor claims an exemption remains property of the estate to the extent its value exceeds the maximum allowable exemption. *Seifert* nevertheless held to the contrary, relying on *In re Rutherford,* 73 B.R. 665 (Bankr. W.D.Mo.1986); *In re Kretzer,* 48 B.R. 585, 12 B.C.D. 1361 (Bankr.D.Nev.1985); *In re Wiesner,* 39 B.R. 963 (Bankr.W.D.Wis. 1984) and *In re Snow,* 21 B.R. 598 (Bankr. E.D.Cal.1982).

*In Snow,* a post-petition fire had destroyed household goods in which the debtor had claimed an exemption in the amount of $1,500. The goods were insured, and the trustee argued that any insurance proceeds in excess of the exempted amount were property of the estate. The court ruled that the debtor was entitled to all insurance proceeds, based on its conclusion that "[a]ssets properly exempted by a debtor are withdrawn from the bankruptcy estate and title to those exempt assets is vested in the debtor to carry into his fresh start." 21 B.R. at 601.

The debtor in *Snow* opted for state law exemptions pursuant to § 522(b), and the court's holding is therefore distinguishable to the extent that the applicable state exemption law differs from § 522(d). In any event, *Snow* relied on nothing more than its own conclusory statements in holding that the estate had no interest in the property exempted by the debtor. We therefore find neither *Snow* nor *Rutherford,* which relied on *Snow,* to be persuasive.

Although both *Wiesner* and *Kretzer* suggested that property in which an exemption is claimed is entirely exempted, neither case offered any authority or rationale which support that proposition.[4] Moreover, the judge who authored the decision in *Wiesner* subsequently reversed his position in *Wittenwyler, supra.* With respect to *Kretzer,* it should also be noted that the issue in that case was whether a violation of the automatic stay had occurred; the

---

**4.** Many cases, including some of the cases cited by *Kretzer,* state to the effect that property which is properly exempted by the debtor revests in the debtor. This reference to "exempted property" tracks the introductory clause in § 522(d), which states that "[t]he following property may be exempted...." *See also* § 522(1) ("Unless a party in interest objects, the property claimed as exempt ... is exempt.") But the vague reference in § 522(d) to "property" is qualified by the more precise statutory language which follows the introductory clause. Similarly, cases which speak of exempted "property" revesting in the debtor should be understood as using a shorthand reference to *interests* in property, as defined (and limited) by the relevant subsections of § 522(d).

court was not directly confronted with a dispute over the estate's interest in property whose value exceeded the amount which may be exempted under § 522(d). *Wiesner* and *Kretzer* are therefore unpersuasive.

For the foregoing reasons, it is our opinion that the estate continues to retain an interest in property claimed as exempt to the extent that the value of the property exceeds the amount properly claimed as exempt. Since *Seifert* held to the contrary, the issue now is whether that decision is binding on this court.

■ Several courts, including our own on two occasions, have concluded that bankruptcy courts are bound by the decisions of the district court in which they sit. *In re Michigan Real Estate Ins. Trust,* 87 B.R. 447, 463 (E.D.Mich.1988) (adopting and incorporating verbatim the report and recommendation of this Court); *In re Moisson,* 51 B.R. 227, 229 (Bankr.E.D.Mich. 1985) (Rhodes, J.); *In re Investment Sales Diversified,* 49 B.R. 837, 846, 13 C.B.C.2d 137 (Bankr.D.Minn.1985); *In re St. Louis Freight Lines,* 45 B.R. 546, 551 (Bankr.E. D.Mich.1984) (Spector, J.); *Eaton Land & Cattle Co. v. Rocky Mountain Inv.,* 28 B.R. 890, 892 (Bankr.D.Colo.1983); *In re V–M Corp.,* 23 B.R. 952, 954–55 (Bankr.W. D.Mich.1982); *In re Bill Ridgway, Inc.,* 4 B.R. 351, 353 (Bankr.D.N.J.1980). As evidenced by this Court's decision in *In re The Vogue,* 92 B.R. 717, 725, 18 B.C.D. 678 (Bankr.E.D.Mich.1988), however, we have come to question whether this conclusion is correct.

The fundamental premise underlying the belief that a district court decision is necessarily binding on a bankruptcy court is that the latter court is inferior to the former. *See, e.g., V–M Corp.,* 23 B.R. at 954–55. It is of course true that inferior courts are bound by the decisions of superior courts. *See, e.g.,* 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.401 (2d ed. 1990) (hereafter *"Moore"*). And it is also true that bankruptcy courts are, in a sense, subordinate to district courts; appeals are taken from the bankruptcy court to the district court, and district judges may re-

verse decisions by bankruptcy judges. But the conclusion that the bankruptcy court is located "below" the district court within a hierarchy is nevertheless problematic for a number of reasons.

The hierarchical structure of the federal courts is explained as follows:

> [S]tare decisis applies not only to successive decisions in the same court, but also to decisions in courts owing obedience to that court. In this context, the principle of conformity is more rigid. All other American courts, state and federal, owe obedience to the decisions of the Supreme Court of the United States on questions of federal law, and a judgment of the Supreme Court provides the rule to be followed in all such courts until the Supreme Court sees fit to reexamine it. In like fashion, the district courts in a circuit owe obedience to a decision of the court of appeals in that circuit and must follow it until the court of appeals sees fit to overrule it. The court of appeals in one circuit owes no obedience to decisions of a court of appeals in another circuit.... This freedom of the circuits to come each to its own conclusion is not only tolerated, but is an important feature in the operation of the Supreme Court's certiorari practice. The district courts, like the courts of appeals, owe no obedience to the decisions of their counterparts in other districts, nor to the decisions of the courts of appeals in other circuits.

*Moore,* ¶ 0.402[1], at 12, 14–16 (footnotes omitted).[5] The hierarchy therefore resembles a pyramid, with the most inferior level being the most populated and the most superior level being the least populated. Such a structure supports the goal of stability.

> The "obedience" principle is tremendously important in the operation of our hierarchical court system, for unless the inferior courts make a good faith effort to follow the decisions of the courts with jurisdiction to review their judgments, appeals would be endless. It is of partic-

---

**5.** Bankruptcy courts do not appear in *Moore's*   discussion of the federal court hierarchy.

ular importance at the Supreme Court level, for it sits primarily to settle the law, and if its decisions were not routinely followed, its docket would be wholly unmanageable.

*Moore,* ¶ 0.402[1] at 12 n. 15.

The objective cited in *Moore* of avoiding voluminous appeals is certainly valid. But because no judge within a multi-judge district is bound by the decision of other district judges, *Starbuck v. City and County of San Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir.1977); *Mueller v. Allen,* 514 F.Supp. 998, 1001 (D.Minn.1981), *aff'd,* 676 F.2d 1195 (8th Cir.1982), *aff'd,* 463 U.S. 388, 103 S.Ct. 3062, 77 L.Ed.2d 721 (1983); *White v. Baltic Conveyor Co.,* 209 F.Supp. 716 (D.N.J.1962), there will be a strong incentive to appeal an adverse decision of the bankruptcy court regardless of whether prior decisions of the district court are viewed as binding on the bankruptcy courts. The rationale cited in *Moore* is therefore not particularly persuasive in this context.

More importantly, the notion that a bankruptcy judge is bound by the decisions of individual district judges sitting in a multi-judge district court raises insoluble practical problems. There are 94 federal judicial districts, each housing one district court, which comprise a total of 575 district judges. But there are only 291 bankruptcy judges nationwide.[6] For each bankruptcy judge in the United States, then, there are approximately two district judges. In the Eastern District of Michigan, there are presently 5 senior district judges, each of whom handles a reduced but not inconsiderable caseload, along with 15 district judges handling a full docket,[7] as opposed to only four bankruptcy judges. The goal of predictability is not well-served when one lower court judge must look to the decisions of two or, in our case, as many as twenty different higher courts.[8]

As previously noted, an important aspect of the rule of *stare decisis* is that each court is bound to follow its own prior decisions. But we have also noted that the decision of any one district judge is not binding on other district judges. In order to reconcile these truisms, we believe it must be recognized that a decision rendered by an individual judge in a multi-judge district simply does not constitute a decision of the district court itself.[9] Absent a decision of the district court, as such, there is no basis for invoking the doctrine of *stare decisis.* Stated somewhat differently, a decision of the district court cannot be binding on the bankruptcy courts unless it is also binding on the district court as a whole.

In a recently published article on this subject, the authors reached essentially the same conclusion:

> As a unit of the district court, the bankruptcy court is only bound by precedent binding on members of the district court. When a district court is composed of

**6.** These statistics are as of November 30, 1990 and reflect, as accurately as possible, the number of authorized positions (filled and vacant) at that time. The figures do not include the new judicial positions created by P.L. 101–650; 104 Stat. 5089 (generally eff. Dec. 1, 1990), which increased the number of district judges to 649, nor do they include district court judges on senior status.

**7.** One position is currently vacant.

**8.** The problem which this poses for the bankruptcy court is particularly acute where, as here, the purportedly binding opinion is unpublished. In order to ascertain whether an unpublished district court decision is "good" law, we presumably must canvas the chambers of the other 19 judges to determine if they have reached a contrary conclusion regarding the issue in question. The administration of justice should not entail such an unwieldy and haphazard process. *See In re The Vogue,* 92 B.R. 717, 725, 18 B.C.D. 678 (Bankr.E.D.Mich.1988); *In re Boufsko, Inc.,* 44 B.R. 98, 100 (Bankr.E.D.Mich. 1984).

**9.** Of course, an *en banc* decision of the district court should be binding on each judge in the district. *See generally* Bartels, *United States District Courts En Banc—Resolving the Ambiguities,* 73 Judicature 40, 42 (1989). Several courts have promulgated rules which explicitly provide for such a procedure. *See, e.g.,* Local Rule 18(B) of the Western District of Oklahoma, Rule 18(b) of the Eastern District of Oklahoma ("In non-jury cases of great public interest or first impression, the Court may sit and consider same *en banc*"); *see also* Rule 18 B of the Northern District of Oklahoma.

more than one district judge, a decision of one judge does not speak for or bind the district as a whole. As a result, a bankruptcy judge, acting on behalf of the district court, is not bound to follow the decisions of any single member of the district court, since the decision may not represent the views of the district as a whole.

*"Are BAP Decisions Binding on Any Court?"*, 18 Calif.Bankr.J. 189, 197–98 (1990).[10]

The conclusion that bankruptcy courts are no more or less bound by opinions of the district court than are the district court judges themselves is consistent with the fact that the bankruptcy courts are, in a sense, indistinguishable from the district courts. *See* 28 U.S.C. § 151 (providing that the bankruptcy courts "shall constitute a unit of the district court"); In *In re Frederick Petroleum Corp.*, 912 F.2d 850, 853 (6th Cir.1990) the court noted that "[t]he Bankruptcy Reform Act of 1978 contemplates that the bankruptcy courts should operate as 'adjunct' to the district court," and concluded that "we view all the proceedings in this action, whether in the Bankruptcy Court or the District Court, as one proceeding in bankruptcy". *See also "Are BAP Decisions Binding on Any Court?"*, 18 Calif.Bankr.J. 189 (1990) (where the authors state that, since bankruptcy courts are units of the district court, an appeal to the latter court of a bankruptcy court decision initiates a sort of " 'in-house' review.") *Id.* at 197–98 n. 64.

■ We therefore believe that we are not bound by *Seifert* and, for the reasons previously stated, we hold that the estate continues to have an interest in the Clarkston property. Accordingly, the principal argument of the bank, derived from *Maitland* and *Dewsnup*, is unavailing here. In affirming the district court's affirmance of

the bankruptcy court's decision in *Dewsnup*, however, the Tenth Circuit did not rely solely on the bankruptcy court's rationale that the asset was abandoned and therefore no longer property of the estate. Two other reasons underly the Court of Appeals' analysis.

The court stated that its assessment that § 506(d) did not apply to the property in question was "bolstered further through review of the creditors [sic] rights provisions found in Chapters 12 and 13." 908 F.2d at 592. The court compared § 1322(b)(2) and § 1111(b)(2) of the Code and reconciled those provisions with § 506. It concluded that "Congress has manifested a strong preference for reorganization rather than liquidation in the bankruptcy setting.... *It is inconsistent with this preference to allow debtors more in a liquidation than they would receive in a reorganization.*" *Id.* (emphasis added).

The Tenth Circuit then turned its attention to § 722 of the Code, which permits individual debtors to redeem personal property under specific circumstances. The court held that this section

> constitutes the only redemption provision provided for Chapter 7 debtors. Notably, it only pertains to personal property. In *Maitland*, the court correctly identified the problem when it stated: "In light of the exclusion of real property in § 722, and its express limitation to specific tangible personal property, *it is obvious that Congress did not intend to permit a debtor to redeem his real property through the use of § 506(d)*." 61 B.R. at 135.

*Id.* (emphasis added). The court concluded by stating: "Allowing lien avoidance under section 506(d), or in this case, complete redemption, gives debtors much more than the 'fresh start' to which they are entitled. We do not believe Congress intended such

---

**10.** Hon. Joseph L. Cosetti, Chief Bankruptcy Judge of the Western District of Pennsylvania, and president of the National Conference of Bankruptcy Judges, also expressed doubts about the precedential value of district judge opinions in multi-judge districts:

> In many places, the district court is larger than the bankruptcy court.... [W]hen the

appellate court consists of one district judge, that judge's ruling is not binding on other district judges. The present system does not create a clear precedent to guide the bankruptcy court.

20 BCD News and Comment, Issue 19, p. A7 (LRP Publications, Nov. 8, 1990).

a result when it enacted these Code provisions." *Id.* at 593.

In a recent decision, the Ninth Circuit Bankruptcy Appellate Panel agreed with the Tenth Circuit. In *In re Lange,* 120 B.R. 132, 20 B.C.D. 1917 (9th Cir. BAP 1990), the court had before it facts very similar to those here. Just as here, the court could not say that the property in question had been abandoned or exempted out of the estate. Therefore, the estate still had an interest in the property and the principal rationale of *Dewsnup* was not available. Nonetheless, the court performed its own statutory analysis and reached the same conclusion as the Tenth Circuit. It reasoned that

> a lien avoided under § 506(d) should be preserved for the benefit of the estate[,] not the debtor. Hence, if the lien is not disposed of, it is to be returned to the former lienholder pursuant to 11 U.S.C. § 725. Contrarily, § 722 constitutes the only redemption remedy Congress provided Chapter 7 debtors. *See* 11 U.S.C. § 722 (1987). Accordingly, we find it unlikely that Congress intended a liquidating debtor to remove, for his or her sole benefit, encumbrances in excess of the value of the real property.

120 B.R. at 136. A good number of other courts are also in accord with the Tenth Circuit's decision in *Dewsnup. See In re Mammoser,* 115 B.R. 758, 20 B.C.D. 1172 (Bankr.W.D.N.Y.1990); *In re Israel,* 112 B.R. 481, 22 C.B.C.2d 1553 (Bankr.D.Conn. 1990); *In re D'Angona,* 107 B.R. 448, 22 C.B.C.2d 460 (Bankr.D.Conn.1989); *In re Doty,* 104 B.R. 133 (Bankr.S.D.Iowa 1989); *In re Larson,* 99 B.R. 1 (Bankr.D.Alaska 1989); *In re Shrum,* 98 B.R. 995 (Bankr.W.

D.Okla.1989); *In re Hoyt,* 93 B.R. 540 (Bankr.S.D.Iowa 1988); *In re McLaughlin,* 92 B.R. 913 (Bankr.S.D.Cal.1988); *In re Smith,* 79 B.R. 650 (Bankr.D.Md.1987); *In re Maitland, supra; In re Wolf,* 58 B.R. 354 (Bankr.N.D.Ohio 1986); *In re Cordes,* 37 B.R. 582, 10 C.B.C.2d 1172 (Bankr.C.D. Cal.1984); *In re Mahaner,* 34 B.R. 308, 11 B.C.D. 271, 9 C.B.C.2d 688 (Bankr.W.D.N. Y.1983).

We are of course aware that this issue has been decided differently in other circuits, *Gaglia v. First Federal Sav. & Loan Ass'n,* 889 F.2d 1304 (3d Cir.1989); *In re Folendore,* 862 F.2d 1537 (11th Cir.1989),[11] as well as in many lower court opinions. After having carefully considered both lines of cases, however, we conclude that the line represented by *Dewsnup* and *Lange* is the better-reasoned.

Although not directly on point, two cases decided by the Sixth Circuit lend support for our conclusion. In *In re Bell,* 700 F.2d 1053 (6th Cir.1983), the court held that a chapter 7 debtor can redeem personal property under § 722 only via a lump-sum payment equal to the value of the collateral. In reaching this conclusion, the court first determined that the redemption of collateral by installment payments was permissible under § 524(c) only if the creditor consents to such an arrangement. The court then reasoned that permitting installment redemption under § 722 "would render the voluntary framework of § 524(c) an exercise in legislative futility." 700 F.2d at 1056. This analysis, in which interpretation of one section of the Bankruptcy Code is informed by consideration of other Code sections, is very similar to that used in

---

**11.** Both the Debtors and the Bank cited *In re Lindsey,* 823 F.2d 189 (7th Cir.1987) as supporting their own view of this issue. "While not expressly addressing the issue of lien avoidance by Chapter 7 debtors, the 7th Circuit Court of Appeals in *Lindsey* implicitly sanctioned the use of § 506(d) in liquidation proceedings even when the purpose is to avoid excess liens for the sole benefit of the debtor." *In re Richardson,* 121 B.R. 546 (Bankr.S.D.Ill.1990). One commentator has a somewhat different view of the enigmatic *Lindsey* opinion:

> The *Lindsey* Court seems to assume that debtors in a Chapter 7 context may employ § 506,

at least in a case where the only creditors in the picture are secured creditors. It appears, however, that the Court would not permit the use of § 506 by debtors for the purpose of retaining property which would otherwise be liquidated, with no benefit to unsecured or other creditors.

"*Section 506(d)—A Chapter 7 Debtor's Secret Weapon?,*" Norton Bankr. L. Advisor, Oct. 1990, p. 2. *See also Dewsnup,* 908 F.2d at 589 (describing *Lindsey* as having "addressed questions which are tangentially related" to the issue before the Tenth Circuit).

most cases which deny strip-down relief to chapter 7 debtors. *See e.g. Dewsnup,* 908 F.2d at 591–93; *Lange,* 120 B.R. at 135–37; *Mammoser,* 115 B.R. at 760; *Israel,* 112 B.R. at 484; *D'Angona,* 107 B.R. at 451 ("[s]tatutory construction … is a holistic endeavor," *quoting United Savings Ass'n of Texas v. Timbers of Inwood Forest Ass'n.,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988)).

*Bell* also noted the practical difficulty bankruptcy courts would have enforcing an order for installment redemption, particularly after the discharge had been entered and the case closed. 700 F.2d at 1056. A similar problem would exist if strip downs were permitted for the sole benefit of chapter 7 debtors.[12]

The other Sixth Circuit case relevant to this issue is *In re Glenn,* 760 F.2d 1428 (6th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985), in which the court held that a chapter 13 debtor could, through a confirmed plan, de-accelerate a home mortgage note until, but not after, the mortgage foreclosure sale. Before deciding that issue, the court examined the history and purpose of the relevant statutory provisions. It noted that "the benefit to the debtor of developing a plan of repayment under Chapter 13, rather than opting for liquidation under Chapter 7, is that it permits the debtor to protect his assets." 760 F.2d at 1433. *See also id.* at 1434 ("Congress was determined not to depart too far from its expressed policy of making wage earner plans more attractive to debtors, especially as an alternative to full bankruptcy proceedings under Chapter 7.") The court recognized that

retention of an asset through a chapter 13 cramdown and liquidation of assets through chapter 7 were mutually exclusive.[13] It also concluded that, notwithstanding Congress' solicitude toward homeowners, especially in chapter 13, § 1322(b)(2) precludes modification of most conventional home mortgages. *Glenn's* discussion of the respective purposes of chapters 7 and 13, along with its emphasis on the Congressional incentives for debtors to utilize chapter 13, leads us to believe that our circuit would agree with *Dewsnup,* 908 F.2d at 592, that allowing chapter 7 debtors to strip down mortgages for their sole benefit would subvert these Congressional inducements and would therefore run counter to public policy.

Based on the foregoing, we conclude that the Debtors' counterclaim fails to state a claim upon which relief can be granted and we will therefore enter an order contemporaneously herewith granting the Bank's motion to dismiss pursuant to Bankruptcy Rule 7012(b).

---

**12.** Nonetheless, cases are now appearing where this form of relief has been granted to some extent. *See In re Hayes,* 111 B.R. 924, 927, 20 B.C.D. 491, 20 C.B.C. 1484 (Bankr.D.Or.1990) (noting that strip down in the context of chapter 13 requires that "some term of the agreement *must* be changed if the debt is not going to be repaid in full.") Whether one changes the date of maturity, as *Hayes* held, or the installment payment amount or interest rate, as the debtors in *Hayes* requested, permitting chapter 7 strip down will generate practical questions as to how a chapter 7 debtor is to repay the stripped down mortgage. The bankruptcy court will be called upon to decide these difficult issues without clear statutory authorization to do so, and with no apparent standards or guidelines applicable to the exercise of its discretion. Such difficulties naturally tend to cast doubt on the wisdom and/or validity of the underlying legal premise.

**13.** The court in *Lindsey* also recognized the incongruity of permitting installment redemption in the context of a liquidation proceeding. The debtors in that case asked the bankruptcy court to fashion a new payment schedule for the stripped-down mortgage. The Seventh Circuit agreed with the lower courts that such relief was not permissible. 823 F.2d at 191.