**In re Nicholas Ligear SHELBY,
Barbara Jeanne Shelby,
Debtors.**

**Bankruptcy No. 96–50382.**

United States Bankruptcy Court,
W.D. Missouri.

March 30, 1999.

Linda S. Tarpley, Kansas City, MO, for Debtor.

Bruce E. Strauss, Merrick, Baker, Hufft & Strauss, Kansas City, MO, Trustee.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

On June 11, 1996, Nicholas Ligear Shelby and Barbara Jeanne Shelby filed their joint petition for relief under Chapter 7 of the Bankruptcy Code. The United States Trustee appointed Bruce E. Strauss as Interim Trustee. In their original Schedule B the Shelbys listed 35 separate items in the category household goods and furnishings, although some of the items, for example the Cookware & Pots, Dishes and Glasses and Electric Appliances, were listed collectively. The Shelbys listed a total value for the household goods and furnishings in the amount of $1100.00. The Shelbys claimed all of the household goods and furnishings as exempt under Mo.Rev.Stat.

§ 513.430(1). In their original schedules the Shelbys listed no antiques and most importantly in the Statement of Financial Affairs they listed "none" under item 14 titled "Property Held For Another Person". After the Shelbys filed their petition and schedules, the Trustee did not challenge the valuations placed by them on the items in the list of household goods and furnishings.

Subsequently, at the § 341 Meeting of Creditors held on August 9, 1996, the Trustee discovered that the Shelbys had numerous items of furniture and antiques in their residence which they had omitted from their bankruptcy schedules. The minute sheet of the Meeting of Creditors indicates that the Trustee had not yet approved the Shelbys' claimed exemptions, did not yet intend to abandon any property and might look at the Shelbys' remaining personal property. Thereafter, on September 13, 1996, the Shelbys filed an amended Statement of Financial Affairs in which they listed furniture and antiques with a value of $1560.00 in their possession that they claimed belonged to their four long since emancipated children.

The Trustee was extremely uncertain regarding what property the Shelbys actually owned; what, if any, property in their possession belonged to their children; and the actual value of the property owned by the Shelbys. On July 1, 1998, the Trustee filed an adversary action entitled "Complaint to Determine Interests in Property and For Turnover of Property of the Estate". The defendants were Nicholas and Barbara Shelby, the debtors, together with their four children, Kathryne L. Gateley, Laura L. Kilpatrick, Vincent Shelby and Jeffrey L. Shelby. The six defendants answered and a trial was held before the Honorable Arthur B. Federman on September 16, 1998. At the conclusion of the trial, Judge Federman announced his findings of fact and conclusions of law and directed the Trustee to prepare an order embodying same. The written Order entitled "Judgment Entry" was filed on Octo-ber 7, 1998, and the Clerk's Judgment was entered and filed that same date. In the detailed Order, Judge Federman held that certain items of the late-disclosed personal property were property of the estate and some items were not property of the estate. The Order provided that the Shelbys had thirty days in which to file an amended schedule of exemptions and that the Trustee had thirty days thereafter to file any objections he had to the proposed exemptions. Neither party appealed any portion of Judge Federman's Order.

On November 6, 1998, the Shelbys filed an Amended Schedule C, List of Exemptions in which they have claimed as exempt under Mo.Rev.Stat. §§ 513.430(3) and 513.430(1) the items of late-disclosed personal property that Judge Federman held were property of the estate. The Shelbys also assigned a dollar value to each item of property. Although not so indicated by the Shelbys, it appears that this amended list of exempt property is in addition to the list of property originally claimed as exempt and that the amended list is not a substitute for the original list. On November 30, 1998, the Trustee filed an objection to the Shelbys' amended schedule C based in part upon the Shelbys' valuation of the late-disclosed personal property claimed as exempt. The Trustee also stated his intention to auction all of the Shelbys' personal property. This objection has brought to a head the main issue this Court must now resolve and which will be discussed in further detail below.

Meanwhile, on October 26, 1998, the Trustee filed a Motion to Employ Auctioneer and to Conduct an Auction Sale of Assets. In this motion the Trustee stated that he was requesting that the bankruptcy court approve the appointment of an auctioneer so that he might sell at auction the late-disclosed items of personal property that Judge Federman ruled were property of the estate along with all of the Shelbys' "non-exempt personal property listed in Schedule 'B'." The certificate of service reflects that a copy of this motion

was mailed to the Shelbys' attorney on October 26, 1998. The Shelbys did not object to the motion, however, the Order Authorizing Employment of Auctioneer and Authorizing Auction was signed by Judge Federman on October 27, 1998. This order authorized the Trustee to employ Dennis Ratliff and Ratliff Auction & Realty to auction the personal property of the bankruptcy estate as set forth in the motion. The Shelbys have never appealed this order nor sought to have this order vacated or set aside.

Also notable is each Individual Estate Property Record and Report for Asset Cases ("Report") filed by the Trustee during the time period in which the issues now before the Court have been simmering and waiting to boil. On October 29, 1996, the Trustee filed a Report in which he listed the Shelbys' household goods and furnishings with a value determined by the Trustee in the amount of $1100.00 and stated "Yes" in the column entitled "Property Abandoned". The Trustee made this same statement in the Reports filed on April 25, 1997; October 30, 1997; and April 29, 1998. However, in the Report filed on October 30, 1998, the Trustee listed the Shelbys' household goods and furnishings with a value determined by the Trustee in the amount of $5000.00 and the space was blank in the column entitled "Property Abandoned". The Trustee did file the October 30, 1998 Report after the Order was entered in the Trustee's adversary proceeding brought against the Shelbys and their children. At the hearing held on January 15, 1999, on the Trustee's objection to the Shelbys' amended Schedule C, the Trustee stated that he had never abandoned any of the Shelbys' household goods and furnishings.

In response to the Trustee's objection to their amended list of exemptions, the Shelbys argue that the Trustee was out of time under Bankruptcy Rule 4003(b) to object to their original list of property claimed as exempt and, therefore, those exemptions should stand as claimed and such property

is no longer property of the estate. The Shelbys concede that the Trustee timely filed an objection to their claimed exemption in the late-disclosed personal property found by Judge Federman to be property of the estate. The Shelbys argue concerning both the original and amended schedules of exempt property, that just because there is a difference in opinion regarding the value of each item of personal property claimed by them as exempt the Trustee cannot just auction off those items of property and then hand them a check for the dollar amount of their exemption. The Shelbys contend that Mo.Rev.Stat. § 513.445 dealing with a debtor's right to claim exemptions upon execution allows a debtor to exempt specific items of personal property, which they have done in this case, and that the Missouri exemption laws do not provide that a debtor have only cash, cash value or bid rights in personal property. The Shelbys assert that "[t]he point of the debtor's right to an exemption in household goods is to allow the debtor to continue to maintain a household," and that the items of property claimed to be exempt must be "set aside to [them] as their PROPERTY." The Shelbys also argue that the relevant "value" of the property claimed as exempt was established at the time the bankruptcy petition was filed, not almost three years later when the Trustee now seeks to auction off the property, and that personal property acquired post-petition should be excluded from auction. Finally, the Shelbys complain that since they filed for bankruptcy the Trustee has never inspected the personal property in question nor sent an agent to inspect same, and that its not fair to them for the Trustee to auction property that has never been inspected or appraised.

The Trustee defends his position by arguing that the 30–day limitation period set forth in Fed.R.Bankr.P. 4003(b) does not apply when, as here, the debtor claims an exemption that is both valid under Missouri law and within the dollar valuation limits of the Missouri exemption statutes.

The Trustee asserts that questions concerning the value of property claimed as exempt may be raised at any time before the property is abandoned and before the bankruptcy case is closed, and because neither of those situations applies in this case he is not barred from now challenging the Shelbys' valuation of the items of household goods and furnishings contained in the original list of property claimed as exempt.[1] The Trustee further argues that Mo.Rev.Stat. § 513.430 places a dollar limitation on the value of personal property a debtor may claim as exempt and that under Missouri exemption statutes a debtor may not exempt items of personal property in excess of that valuation limit. The Trustee states that he does not propose to auction off the Shelbys' household goods and furnishings and then hand them a check in the total dollar amount of their exemption rights. The Trustee proposes to conduct an auction at which the Shelbys may bid on items of personal property of their choice, and if they are the successful bidders, the Shelbys may use whatever portion of their dollar exemption rights is necessary to purchase the items. In other words, the Trustee will allow the Shelbys, in an auction situation, to decide what household goods and furnishings they wish to keep within the dollar value limitations set by the Missouri exemption statutes. The Trustee does not contest the Shelbys' assertion that neither he nor anyone acting on his behalf has ever inspected the property in question. The Trustee does state that the auctioneer Judge Federman authorized him to hire "has not yet been granted access to the home to assess the value of the newly discovered assets or of the previously exempted assets."

Following the hearing, the Court took the matter under advisement and allowed the parties additional time to file briefs. The Court also offered the parties an additional time to settle the matter, which has proved to be unsuccessful. Following a settlement conference, the Trustee sent a letter to the Court in which he states that:

> On a weekly basis trustees sell automobiles in which debtors claim a $1,000.00 exemption. The debtors receive the first $1,000.00 from the sale of the vehicle and the remainder goes to the bankruptcy estate. A similar result occurs when a trustee sells a house. After payment of the existing liens, the debtors receive their $8,000.00 exemption. All monies received above and beyond the liens and exemptions become part of the bankruptcy estate and are later disbursed to creditors. A trustee does not have to object to the debtor's claimed exemptions if he disagrees with the potential sale price of the house. The house may sell for more or less than is listed in the schedule. If the debtor lists the proper statutory exemption, in the allowable statutory amount, against the appropriate property, the trustee really has no basis for an objection. The filing of an objection under those circumstances could warrant the imposition of sanctions against the trustee.

In this same letter, the Trustee also states that "[t]he courts would be inundated with objections to exemptions if trustees had to object to the value placed on items by debtors."

The Court has read the post-hearing briefs submitted by the parties, conducted its own independent research and is now ready to rule.

### Discussion

1. *Whether the Trustee has abandoned the estate's interest in the items of household goods and furnishings originally claimed as exempt by the Shelbys?*

As a threshold matter, this Court on it's own initiative raises the question of

---

1. With the exception of challenging the Shelbys' valuation of the property claimed as exempt, the Trustee does not contest the well-established rule that "[t]he filing of an amended schedule does not reopen the time to object to the original exemptions." *In re Kazi,* 985 F.2d 318 (7th Cir.1993).

whether the Trustee has abandoned the bankruptcy estate's interest in the items of household goods and furnishings originally claimed as exempt by the Shelbys and valued by them in the aggregate amount of $1100.00. Property that is abandoned by the Trustee "is removed from the estate, thereby divesting the trustee of control, and divesting the bankruptcy court of jurisdiction over matters concerning the abandoned property." *In re Keller,* 229 B.R. 900 (Bankr.S.D.Ohio 1998) (citing *In re DeVore,* 223 B.R. 193 (9th Cir. BAP 1998)). "Upon technical or specific abandonment, the property 'ceases to be property of the estate and reverts to the debtor.'" *Id.* (quoting *In re Sills,* 126 B.R. 974, 976 (Bankr.S.D.Ohio 1991)). The question arises in this case based upon the Trustee's statement in each of the Reports filed with the Court on October 29, 1996; April 25, 1997; October 30, 1997; and April 29, 1998 that "Yes" he had abandoned the Shelbys' household goods and furnishings with a value determined by the Trustee to be $1100.00.

Section 554(a) of the Bankruptcy Code provides that: "After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Rule 6007(a) states that:

**(a) NOTICE OF PROPOSED ABANDONMENT OR DISPOSITION; OBJECTIONS; HEARING.** Unless otherwise directed by the court, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees, and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code. A party in interest may file and serve an objection within 15 days of the mailing of the notice, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to other entities as the court may direct.

Fed.R.Bankr.P. 6007(a). Local Bankruptcy Rule 6007–1 provides that: "The § 341 notice shall include notice that at the meeting of creditors a trustee may announce the intent to abandon specific property if it is burdensome or inconsequential to the estate. Objections to abandonment must be filed and served on the trustee within 10 days after the meeting." Section 102(1) of the Bankruptcy Code defines "after notice and a hearing" to mean "such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances," and authorizes an act without an actual hearing if such notice is given properly and, among other things, such a hearing is not requested timely by a party in interest. 11 U.S.C. § 102(1).

The question is whether the Trustee's statement in each of the Reports filed with the Court that "Yes" he had abandoned the household goods and furnishings provides sufficient notice to all parties in interest of the Trustee's intent to abandon those assets. The Court answers the question in the negative and determines that the Trustee has not abandoned the estate's interest in the Shelbys' household goods and furnishings listed in their original Schedule C. The Trustee did not file any notice of abandonment under section 554(a) that was provided to all of the parties in interest in this case. It does not appear that any of the Reports were provided to all of the parties in interest and, therefore, not all of the parties in interest would be aware of the Trustee's statement in his Reports and accordingly would not have had an opportunity to object to the abandonment. *See In re Missouri River Sand & Gravel, Inc.,* 88 B.R. 1006, 1010 (Bankr.D.N.D.1988). The Trustee did not comply with any of the statutory and procedural requirements for abandonment. The Court determines that it retains jurisdiction to rule on the issues relevant to the

household goods and furnishings originally claimed as exempt by the Shelbys.

2. *Whether the Trustee's challenge to the valuation placed on the household goods and furnishings originally claimed as exempt by the Shelbys is out of time?*

■ Section 522(1) of the Bankruptcy Code states that:

The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt.

11 U.S.C. § 522(1). Bankruptcy Rule 4003(b) provides that:

The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list or supplemental schedules unless, within such period, further time is granted by the court. Copies of the objections shall be delivered or mailed to the trustee and to the person filing the list and the attorney for such person.

Fed.R.Bankr.P. 4003(b). Bankruptcy Rule 4003(c) states in pertinent part that: "In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed." Fed.R.Bankr.P. 4003(c). Also relevant is section 522(a)(2) of the Bankruptcy Code, which defines "value" as the "fair market value as of the date of the filing of the petition or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate." 11 U.S.C. § 522(a)(2).

The Bankruptcy Code allows a state to opt out of the Federal bankruptcy exemptions. *See* 11 U.S.C. § 522(b)(1). The State of Missouri's choice to opt out is set forth in Mo.Rev.Stat. § 513.427 (Supp. 1999), which states:

Every person by or against whom an order is sought for relief under Title 11, United States Code, shall be permitted to exempt from property of the estate any property that is exempt from attachment and execution under the law of the state of Missouri or under federal law, other than Title 11, United States Code, Section 522(d), and no such person is authorized to claim as exempt the property that is specified under Title 11, United States Code, Section 522(d).

The exemption at issue herein is permitted by Mo.Rev.Stat. § 513.430.(1) (Supp.1999), which provides that:

The following property shall be exempt from attachment and execution to the extent of any person's interest therein:

(1) Household furnishings, household goods, wearing apparel, appliances, books, animals, crops or musical instruments that are held primarily for personal, family or household use of such person or a dependent of such person, not to exceed one thousand dollars in value in the aggregate.

The Trustee concedes that each of the Shelbys may claim a $1000.00 exemption under section 513.430.(1), and that other exemption rights are also available to the Shelbys under which they may claim the value of additional items of household goods and furnishings as exempt, for example, Mo.Rev.Stat. § 513.430.(3) (Supp. 1999) (the "wild card" exemption provision). However, the Trustee contends that the values placed by the Shelbys on each of the items of personal property contained in the list of household goods and furnishings originally claimed as exempt when they filed their bankruptcy petition are too low, and that if the items are sold at auction they will generate funds in excess of the exemption rights of the Shelbys that

will be available for distribution to creditors.

The Shelbys contend that the United States Supreme Court case *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), is dispositive of this issue, and that based on *Taylor* any disagreement that the Trustee may have had with them regarding the valuation of the items of household goods and furnishings originally claimed as exempt should have been raised in an objection filed within 30 days of the conclusion of the § 341 Meeting of Creditors. The Trustee asserts that *Taylor* is distinguishable and should be limited to its particular factual situation. The Trustee argues that in this case the exemptions were properly claimed under Missouri law, however, the parties have a difference in opinion regarding the fair market value of the property claimed as exempt. The Trustee's position is that it is improper, and possibly sanctionable, to object to properly claimed exemptions, but that valuation issues concerning property claimed as exempt may be resolved at any time before the case is closed or the assets are abandoned.

The issue before the Supreme Court in *Taylor* was "whether the trustee may contest the validity of an exemption after the 30–day period [in Rule 4003(b)] if the debtor had no colorable basis for claiming the exemption." *Taylor*, 503 U.S. at 639, 112 S.Ct. at 1646. In *Taylor* the debtor filed for bankruptcy under Chapter 7 while she was pursuing an employment discrimination claim in state court. In her schedules, the debtor claimed as exempt property the money that she expected to win in her discrimination suit. The debtor described this property as " 'Proceeds from lawsuit—[Davis] v. TWA' and 'Claim for lost wages' and listed its value as 'unknown.' " *Id.* at 640, 112 S.Ct. at 1646. At the § 341 Meeting of Creditors, the debtor's attorneys who were representing her in the discrimination lawsuit told the trustee that they estimated the debtor might win $90,000 in her suit against

TWA. Subsequently, the attorneys told the trustee that the lawsuit might be settled for $110,000. Although the debtor claimed the full amount of the expected proceeds as exempt, she did not have a right to exempt more than a small portion of the expected proceeds under either state law or the federal exemptions. The trustee doubted that the lawsuit had any value and decided not to object to the claimed exemption. The lawsuit did settle and TWA paid the debtor $110,000. The debtor's attorneys received $71,000 of this amount, which the trustee demanded that they turn over to him as property of the bankruptcy estate. The·attorneys argued that they were entitled to keep the fees because the debtor had claimed the proceeds of the lawsuit as exempt to which the trustee had failed to object. The bankruptcy court ruled in favor of the trustee concluding that because the debtor had " 'no statutory basis' " for claiming the proceeds of the lawsuit as exempt the attorneys had to turnover $23,000 to the trustee, which was a sum sufficient to pay off all of the debtor's unpaid creditors. *Id.* at 641, 112 S.Ct. at 1647. The district court affirmed, but the Third Circuit reversed holding that because the trustee had failed to object to the claimed exemption in a timely manner, the bankruptcy court could not require the attorneys to turn over the money that the debtor had claimed as exempt.

The Supreme Court affirmed the Third Circuit holding that the trustee's "failure to [timely object to the claimed exemption] prevents him from challenging the validity of the exemption." *Id.* at 642, 112 S.Ct. at 1648. The Supreme Court rejected the trustee's argument that courts may invalidate a claimed exemption after expiration of the 30–day period in Rule 4003(b) if the debtor does not have a good faith or reasonably disputable basis for claiming the exemption. The Supreme Court opined that the trustee "cannot contest the exemption at this time whether or not [the debtor] had a colorable statutory basis for claiming it." *Id.* at 643–44, 112 S.Ct. at 1648. The Supreme Court continued:

Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality. In this case, despite what respondents repeatedly told him, [the trustee] did not object to the claimed exemption. If [the trustee] did not know the value of the potential proceeds of the lawsuit, he could have sought a hearing on the issue, *see* Rule 4003(c), or he could have asked the Bankruptcy Court for an extension of time to object, *see* Rule 4003(b). Having done neither, [the trustee] cannot now seek to deprive [the debtor] and [her attorneys] of the exemption.

*Id.* at 644, 112 S.Ct. at 1648.

After the Supreme Court decided *Taylor,* the Ninth Circuit and the Seventh Circuit entered opinions addressing issues similar to the issues raised by the parties before this Court. In *Hyman v. Plotkin (In re Hyman),* 967 F.2d 1316 (9th Cir. 1992), after the debtors filed a petition under Chapter 7 of the Bankruptcy Code, Gary A. Plotkin was appointed as trustee to liquidate their estate. The debtors valued their home at $415,000. The home was encumbered by $347,611 in consensual liens. In their bankruptcy schedules, the debtors claimed their homestead as exempt under California law, and listed the value of the exemption as $45,000. Plotkin never objected to the claimed exemption, but did file an application with the bankruptcy court seeking to employ a real estate broker to assist in the marketing and sale of the debtors' home. The bankruptcy court granted the application. Thereafter, the debtors filed a declaratory judgment action against Plotkin claiming their home was not an asset of the estate because of its exempt status. In the alternative, the debtors claimed that all postpetition appreciation in the value of the home inured to them and not to the estate, and, therefore, they were entitled to the $45,000 exemption under California law plus the increase in the value of their home from the bankruptcy filing date to the sale date. The bankruptcy court granted summary judgment in favor of Plotkin, and a divided Bankruptcy Appellate Panel affirmed. The Ninth Circuit affirmed.

The Ninth Circuit opined:

The Hymans first argue that by listing "homestead" instead of "homestead exemption" on their schedule of exempt property, they were claiming as exempt property their entire homestead, not just $45,000. Because the trustee did not object to this listing within the time allowed by Bankruptcy Rule 4003(b), the Hymans claim that their entire homestead became exempt property by operation of law. 11 U.S.C. § 522(*l*)....

. . . .

The Hymans' schedule of exempt property listed "homestead" as an exemption under Cal.Civ.Proc.Code § 704.720, and valued the exemption at $45,000. Based on this information, the Hymans did not sufficiently notify others that they were claiming their entire homestead as exempt property; their schedule only gave notice that they claimed $45,000 as exempt, which is the proper amount of their homestead allowance under sections 704.720 and 704.730. (Citation omitted.) Thus, the trustee had no basis for objecting, and could well have suffered the bankruptcy judge's ire had he objected to the $45,000 exemption to which the Hymans were clearly entitled.

. . . .

Finally, the Hymans argue that the bankruptcy court erred in holding that they are only entitled to $45,000 upon the sale of the home. According to the Hymans, they are entitled to $45,000 plus the home's appreciation in value since the filing of the bankruptcy petition.

. . . .

[T]he Hymans' claim for appreciation is without merit. The California statute gives the Hymans a $45,000 exemption as of the time of sale, not a $45,000 equity interest in the property.... [I]n the bankruptcy context, where an appre-

ciable period of time usually passes between filing of the petition and sale of the property, ... the property [can] rise or fall in value.... The debtor's right to use the exemption comes into play not upon the filing of the petition, but only if and when the trustee attempts to sell the property. At that point, and not before, the debtor first faces the possibility of being dispossessed of his home, and the grim prospect of having to use the exemption money to find alternative housing.

*Hyman,* 967 F.2d at 1319–21. The Ninth Circuit acknowledged that under *Taylor* "[u]nless there is a timely objection from a party in interest, any property claimed as exempt by a debtor—regardless of whether the claimed exemption is valid—is automatically exempt under section 522(*l*)." *Id.* at 1319 n. 6. However, in response to the debtors' argument that Plotkin was bound to the value of the home listed in their bankruptcy schedules because he failed to object to their claimed exemption, the Ninth Circuit stated:

> **The Hymans' argument that the trustee is bound by the value listed on their schedule of assets because he did not object to that value within the 30 days allowed by Rule 4003 is misplaced.** According to their own schedule of exemptions, the Hymans only claimed a $45,000 homestead exemption.... That figure is fixed "as of the date of the filing the petition." 11 U.S.C. § 522(a)(2). However, **nothing in section 522, or anywhere else in the Bankruptcy Code for that matter, requires that non-exempt assets have their values frozen on the petition date.** *Cf.* 11 U.S.C. § 506 & Bankr.Rule 3012 (value of property encumbered by a lien determined at time of hearing before the court); 11 U.S.C. §§ 1124, 1129 (value of property determined on effective date of plan of reorganization).

*Id.* at 1320 n. 9 (emphasis added).

In *In re Salzer,* 52 F.3d 708 (7th Cir. 1995), *cert. denied,* 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996), the Chapter 7 debtor filed a complaint against his landlord, Stinson, seeking damages alleging that the landlord had violated the automatic stay by placing a utility trailer belonging to the debtor that he had claimed as exempt in a locked storage locker, and by locking the leasehold premises and denying the debtor access to other personal property belonging to him that he also had claimed as exempt. The landlord had locked up the utility trailer upon his own initiative, but had locked up the remainder of the property at issue at the request of the Chapter 7 trustee. The bankruptcy court ruled against the debtor and the district court affirmed. The Seventh Circuit affirmed, opining in relevant part:

> Salzer contends that Stinson violated the automatic stay when, at the direction of the trustee, he secured the personal property located at the leasehold premises and denied Salzer access to it. Salzer theorizes that because there was no objection to his claim of exemption in the property within the thirty days allotted by Bankruptcy Rule 4003(b), title to the property revested in him, and he was entitled to physical possession of the property at the end of the thirty days. Consequently, he asserts, Stinson's refusal to turn over the property upon his demand violated the automatic stay.

> Upon the filing of a bankruptcy, all property of the debtor becomes property of the bankruptcy estate. 11 U.S.C. § 541; *In re Kazi,* 985 F.2d at 320. However, the debtor can prevent certain property from being used to satisfy his creditors by claiming it as exempt. 11 U.S.C. § 522(*l*); *Taylor v. Freeland & Kronz,* 503 U.S. 638, 643, 112 S.Ct. 1644, 1647, 118 L.Ed.2d 280 (1992). Once the debtor claims property exempt, the creditors and trustee have the opportunity to object to the claimed exemptions. 11 U.S.C. § 522(*l*); Bankruptcy Rule 4003(b); *In re Kazi,* 985 F.2d at 320. Failure of a trustee or creditor to object within the thirty days provided by Bank-

ruptcy Rule 4003(b) waives the right to contest the validity of an exemption. *Taylor*, 503 U.S. at 644, 112 S.Ct. at 1648.

However, the running of the thirty day period without objection does not mean that the debtor is entitled to possession of the property on the thirty-first day. The statutory scheme established by Indiana law allows the debtor to claim as exempt, *inter alia*, "[r]eal estate or tangible personal property of four thousand dollars ($4,000)." Ind. Code § 34–2–28–1(a)(2). Under that scheme, in conjunction with 11 U.S.C. § 522(*l*), the debtor is required to file a list of property claimed as exempt. The officer holding the execution, the trustee when the debtor is in bankruptcy, is then obligated to have the property appraised and set apart. He then must sell other property subject to execution (non-exempt property). Ind.Code § 34–2–28–7. Thus, the statutory scheme envisions an appraisal ordered by the trustee insuring that the true value of the property claimed as exempt coincides with the debtor's valuation and that it does not exceed the four thousand dollar statutory limit. Property claimed as exempt but exceeding the statutory limit in appraised value is to be sold. *See id.*

Accordingly, the statutory scheme anticipates the trustee's continued administration of the exempted property until such time as its value is definitively determined. ***Clearly this is appropriate because while the failure to object to an exemption does waive any right to contest the validity of the exemption, such a failure does not waive the estate's right to any excess value over the allowed exemption limit.*** *In re Bronner*, 135 B.R. 645, 647 (9th Cir. BAP 1992); *In re Hyman*, 123 B.R. 342, 348–49 (9th Cir. BAP 1991) *aff'd* 967 F.2d 1316 (9th Cir.1992); *In re Page*, 171 B.R. 349, 352 (Bankr.W.D.Wis.1994).

*Salzer*, 52 F.3d at 711–12 (emphasis added; footnotes omitted). In a footnote, the Seventh Circuit again commented that the trustee has the "ability to administer the property until such time as the value is determined." *Id.* at 712 n. 5. It is worth noting that although in *In re Kazi*, 985 F.2d 318, 320–21 (7th Cir.1993), the Seventh Circuit unambiguously stated that pursuant to the Supreme Court's ruling in *Taylor* the "[f]ailure to file a timely objection is an absolute bar to consideration of the merit of the exemptions" and upheld the debtors' claimed exemption in unexemptible pension trust funds based upon the trustee's failure to timely object, in *Salzer* the Seventh Circuit clearly distinguished the issue of whether the debtor had a legal basis for the claimed exemption from the issue of valuing the validly claimed exemption.

In *Ainslie v. Grablowsky (In re Grablowsky)*, 1994 WL 410995 (4th Cir.1994), in an unpublished opinion the Fourth Circuit, based on the reasoning in the district court's opinion and order, affirmed the district court's ruling that the Chapter 7 debtor had exempted only $1.00 in each of two partnerships in which he had an interest and had not exempted his entire interest, and, therefore, good cause existed to grant relief from the automatic stay to allow other partners in one of the partnerships to purchase from the trustee any non-exempt portion of the debtor's interest in the partnerships. The district court's opinion is reported at *Addison v. Reavis*, 158 B.R. 53 (E.D.Va.1993), and involved two consolidated appeals from the bankruptcy court in the Reavis and Grablowsky bankruptcy cases. The appeal in *In re Reavis* was dismissed during the pendency of that appeal to the Fourth Circuit. *Grablowsky*, 1994 WL 410995 at *1 n. 1. The relevant facts and district court's decision in the Grablowsky case are as follows.

Pursuant to the Virginia homestead exemption statute, Grablowsky claimed as exempt a $1.00 interest in each of two limited partnerships, Piper Apartments

Associates, L.P. and Lisa Square Associates, L.P., in addition to claiming as exempt 29 other interests in property. John Ainslie and John Ainslie, Sr. were general partners in Piper. No one filed an objection to the debtor's claimed exemptions. The Ainslies moved for relief from the automatic stay in order to purchase from the Chapter 7 trustee the non-exempt interest that the debtor had in the two limited partnerships. The bankruptcy court granted the motion holding that the debtor's exempt interest in each of the two partnerships was limited to the $1.00 listed on Schedule C of his bankruptcy petition as exempt. The district court affirmed ruling that under the Virginia exemption scheme, when a debtor attaches a precise dollar value to an interest he is claiming as exempt and does not amend that value upward within the amount allowed under the Virginia homestead law, which allows an individual householder debtor to exempt up to $5000 and married householder debtors filing jointly to exempt up to $10,000 worth of real or personal property from the bankruptcy estate, the debtor's exemption for that interest is limited to the precise value the debtor listed as exempt, regardless of the trustee's failure to object to the exemption. The district court opined:

Virginia law does not confine the debtor to the specific amount listed for a particular exemption in his homestead deed; the debtor may amend upward the valuation stated on the schedule if and when the bankruptcy court determines that a higher value is more appropriate for that item. (Citation omitted.) However, the debtor may not adjust the value of an exemption upward if doing so will elevate the total sum value of all the debtor's homestead exemptions above the $5,000/$10,000 maximum allowed under the statute. (Citations omitted.)

Thus, under Sections 34–4 and 34–13 [the Virginia homestead exemption statutes], the exemptions are claimed primarily according to the specified dollar value of the property, not by virtue of the type of property.

*Addison,* 158 B.R. at 56. The district court also stated that it was "interpret[ing] the homestead statute as a value statute; the statute allows an exemption to the householder primarily according to the value of his property, subject to a maximum value, rather than an exemption of an entire item." *Id.* at 56 n. 6. Further, the district court opined that it was inappropriate for a debtor to place a nominal valuation upon property "in an attempt to completely exempt an asset or group of assets worth well over the statutory maximum." *Id.* at 57.

The district court flatly rejected the debtor's argument that pursuant to the Supreme Court's decision in *Taylor* he was entitled to exempt the full value of the partnership interests, notwithstanding the dollar limitations imposed by the Virginia homestead law, because the trustee failed to object to his claimed exemption. *Id.* at 58.

The district court also addressed the debtor's argument based upon dicta contained in the *Taylor* opinion:

Debtors Grablowsky and Reavis offer an additional argument based on *Taylor* in support of their position. They contend that even if *Taylor's* holding does not compel this Court to conclude that their full interests in the partnerships are exempt, *Taylor's* dicta supports that conclusion. Specifically, the debtors note that *Taylor* states:

In this case ..., [the trustee] did not object to the claimed exemption. If [the trustee] did not know the value of the potential proceeds of the lawsuit, he could have sought a hearing on the issue, *see* Rule 4003(c), or he could have asked the bankruptcy court for an extension of time to object, *see* Rule 4003(b).

*Id.* at 644, 112 S.Ct. at 1648. Debtors interpret this as an indication of the Supreme Court's determination that in the absence of a timely objection within

Rule 4003(b)'s thirty day period, the value attached by debtor to the property— as opposed to the value of the exemption stated in the schedule—becomes conclusive on all parties. As a result, given the lack of a timely objection, the Court and parties supposedly must accept Grablowsky's valuation of his partnership interests as worth $1.00 each and the Reavis's valuation of their interest as worth $10.00. Debtors conclude that by claiming an exempt value of $1.00 and $10.00 each in partnership interests conclusively established to be worth $1.00 and $10.00 each, respectively, they have exempted their full interests in these partnerships.

Debtors read far more into this passage from *Taylor* than the language will bear. The Supreme Court's language neither states nor implies that the debtor's valuation of the property at issue becomes conclusive when there has been no objection pursuant to Code § 522(*l*) and Rule 4003(b). This language was written in the context of a debtor who explicitly claimed as exempt the entire value of property worth an unknown amount of money. The passage has no relevance where, as in the present cases, the debtors have not claimed the entire amount of their interests in property exempt but instead have claimed a precise value amount of their interests exempt. *See In re Shoemaker*, 155 B.R. at 555.

*Id.* at 60 (footnote omitted). The district court concluded that:

*Taylor* simply does not address whether a debtor's valuation of property becomes conclusive in the absence of a timely objection pursuant to 11 U.S.C. § 522(*l*) and Rule 4003(b). A number of courts have addressed this issue, however. Some courts have concluded that no challenge to the value of the property may be asserted after the period for objections to a debtor's exemptions has expired. *See In re Okoinyan*, 135 B.R. 691 (Bankr.S.D.Fla.1991); *cf. In re*

*Wiesner*, 39 B.R. 963, 965 (Bankr. W.D.Wis.1984) (holding that "a collateral attack on exemptions by means of an application for appraisal outside the [court ordered fifteen day] period for objections is barred") (citing *In re Walsh*, 5 B.R. 239 (Bankr.D.D.C.1980)). This Court finds more persuasive, however, those decisions which have quite properly recognized:

the distinction between an objection to the existence of an exemption and an objection to the valuation of the property in which debtors claim an exemption. Only the former objection must be made within the Bankruptcy Rule 4003(b) 30–day period following the meeting of creditors.

*In re Hyman*, 123 B.R. 342, 348 (9th Cir. BAP 1991), *aff'd*, 967 F.2d 1316 (9th Cir.1992); *see also In re Allen*, 44 B.R. 38, 40–41 (Bankr.D.N.M.1984) (citing *In re Fitzgerald*, 729 F.2d 306, 308 (4th Cir.1984)). ***Thus, should the trustees' motions be equated with challenges to debtors' valuation of their interests in the partnerships at issue, such challenges are not foreclosed by trustees' failure to object pursuant to 11 U.S.C. § 522(l) and Rule 4003(b). Id.***

*Id.* at 61 (emphasis added).

The Eleventh Circuit in *Allen v. Green (In re Green)*, 31 F.3d 1098 (11th Cir. 1994), appears, at first blush, to be the only circuit to hold that when a Chapter 7 trustee fails to challenge the valuation of a debtor's exemption within the 30–day period of Rule 4003(b), the debtor is entitled to the entire value of the property claimed as exempt. However, a close reading of *Green* reveals a factual situation almost identical to the circumstances faced by the Supreme Court in *Taylor*. In *Green* the Chapter 7 debtor listed in her personal property schedule, under a heading for "contingent and unliquidated claims of every nature," a lawsuit from an automobile accident with a value of one dollar. The debtor claimed the value of the lawsuit as exempt in the amount of one dollar. The

trustee conceded that he understood that the amount of one dollar represented a contingent value and he specifically denied being misled into believing that the lawsuit had an actual value of only one dollar. The trustee did not object to either the debtor's reported valuation of the lawsuit or her exemption of that reported value. The trustee eventually settled the lawsuit for $15,000, after which the debtor filed a motion to have the entire settlement disbursed to her. The bankruptcy court denied the motion, but the district court, relying on *Taylor*, reversed concluding that the debtor had exempted the entire lawsuit and not just one dollar of its value. The Eleventh Circuit affirmed the district court stating:

> Both parties agree that Green's listing of her lawsuit at a value of one dollar indicated that its present value was contingent, not that it had an actual present value of one dollar. The parties also agree that Green exempted the lawsuit for its entire reported value of one dollar, and that the Trustee did not object to that exemption claim. Thus, this case presents a pure question of law: What legal significance attaches to a debtor's exemption of the entire, but contingent, reported value of an asset?

> The Trustee contends that, because Green exempted only one dollar of the value of her potential lawsuit, she is entitled to only one dollar of the settlement fund that resulted from that lawsuit.

> . . . .

> Green responds that, although she exempted only one dollar of the lawsuit, that was its entire reported value. Because the Trustee failed to challenge her valuation or exemption in a timely manner, Green concludes that she is entitled to the entire value of the lawsuit, whatever it turned out to be. We agree.

> . . . .

> In *Taylor v. Freeland & Kronz*, 503 U.S. 638, 641, 112 S.Ct. 1644, 1647–49, 118 L.Ed.2d 280 (1992), the Supreme

Court interpreted [§ 522(*l*) and Rule 4003(b) ] strictly, holding that if no interested party objects to the exemption list within 30 days of filing, then the claimed exemptions are conclusively correct. *Taylor* involved facts remarkably similar to those of the present case. There, the debtor reported a lawsuit with an "unknown" value on her personal property schedule, and likewise exempted that lawsuit for an "unknown" amount.... [A]n unstated premise of the Court's holding was that a debtor who exempts the entire reported value of an asset is claiming the "full amount," whatever it turns out to be. The Supreme Court went on to hold that, because the trustee had not timely objected to the debtor's exemption of the lawsuit, the debtor was entitled to the entire settlement fund. *Id.* at 641–45, 112 S.Ct. at 1647–49.

In the present case, Green exempted the full reported value of her lawsuit, and neither the Trustee nor any other interested party objected. The only potential factual distinction between this case and *Taylor* is that here, instead of reporting her lawsuit as having an "unknown" value, Green reported it as having a value of one dollar. However, the Trustee conceded at oral argument that he knew Green used that nominal, one dollar value to signify an asset with a contingent value; the Trustee specifically denied having been misled into believing that Green's lawsuit had an actual present value of one dollar. Thus, the facts of this case are materially the same as those in *Taylor*. In this case, one dollar exempted is to one dollar reported as, in *Taylor*, "unknown" exempted was to "unknown" reported.

*Green*, 31 F.3d at 1099–1100. In *Green*, the trustee "saw the listing of the lawsuit in this case as being that 'the claim has not been liquidated and we don't know what it's going to be worth.'" *Id.* at 1100 n. 1. The Eleventh Circuit opined that a "trustee may not wait until the value of a contin-

gent claim is established before deciding whether to object; instead, he must object within the period allowed by Bankruptcy Rule 4003." *Id.* at 1101.

In the case presently before the Court, none of the assets in question have a contingent or unliquidated value. The Trustee and the Shelbys have a difference in opinion regarding the fair market value of the personal property claimed as exempt. The circumstances herein are distinguishable from the situation in both *Green* and *Taylor.*

Several bankruptcy courts and the Ninth Circuit Bankruptcy Appellate Panel have concluded that the 30–day time period for objecting to exemptions in Rule 4003(b) only runs as to the validity of the claimed exemption and does not prohibit a Chapter 7 trustee from challenging the value of the validly claimed exemption prior to abandonment of the asset or when the case is closed. *See, e.g., In re Bregni,* 215 B.R. 850 (Bankr.E.D.Mich.1997); *In re Heflin,* 215 B.R. 530 (Bankr.W.D.Mich. 1997); *In re Jackson,* 194 B.R. 867 (Bankr. D.Ariz.1995); *In re DeSoto,* 181 B.R. 704 (Bankr.D.Conn.1995); *In re Mercer,* 158 B.R. 886 (Bankr.D.R.I.1993), *aff'd,* 53 F.3d 1 (1st Cir.1995) (no discussion by the First Circuit regarding the issue before this Court); *In re Shoemaker,* 155 B.R. 552 (Bankr.N.D.Ala.1992); *Bronner v. Gill (In re Bronner),* 135 B.R. 645 (9th Cir. BAP 1992); *In re Gaylor,* 123 B.R. 236 (Bankr. E.D.Mich.1991).

In *Heflin,* the bankruptcy court determined that a Chapter 7 trustee was not required to object within the 30–day period of Rule 4003(b) to the debtor's valuation of a 40 acre parcel of real property in which the debtor claimed valid homestead and catchall exemptions that were within the statutory maximums allowed by law. The court opined:

> [I]n this case the Debtor did not indicate in his schedules that he intended to claim the entire value of the Property as exempt, regardless of its eventual sale price or market value. Instead, the Debtor's schedules set forth specific dollar amounts, i.e., $15,000 and $579 which are consonant with the maximum statutory exemptions. Again, the Trustee had no reason to object to the amount of the exemptions because they were within the limits established by the Code.

> Thus, unlike the facts in *Taylor,* this case does not involve a situation where the Trustee has failed to object to an improper exemption and then is bound by the consequences of his decision. Rather, the Trustee in this case did not object because there was both a valid statutory basis for the exemptions and the amount was within the statutory limits. Indeed, if the Trustee had filed an objection, it most likely would have been denied because the specific exemptions claimed in the Debtor's schedules are legally valid.

*Heflin,* 215 B.R. at 533–34. The bankruptcy court in *Heflin* held that "a trustee is not legally required to object to a debtor's scheduled value relating to specific property," *id.* at 535, and further opined that:

> If this court were to accept the Debtor's arguments [that in all cases the trustee is bound by the 30–day time period in Rule 4003(b) ], then the Trustee would be placed in the untenable position of having to "object first and ask questions later" in every case where the claimed exemption exceeded the estimated fair market value minus secured claims. It would also provide an incentive for savvy (or less than candid) debtors to purposely underestimate the fair market value of the property in the hope that a trustee will fail to object and then be prevented from subsequently administering the property on behalf of the estate.

Finally, binding a trustee to a debtor's estimated scheduled fair market value as a means of exempting the entire property subverts the Congressional intent of providing a fresh start for the honest but unfortunate debtor. If a debtor intends to fully exempt a particu-

lar piece of property in its entirety, regardless of its value, then the debtor should unambiguously express this intention in his schedules. Where the debtor makes a clear manifestation of his intent to seek an unlimited exemption in a specific piece of property, then the trustee has ample notice and can either file an objection or seek an extension of time in which to conduct further investigation.... However, the trustee is under no obligation to object where there is an appropriate statutory basis for the exemption and the amount claimed is within the statutory limits. Nothing in the Bankruptcy Code requires a trustee to object to the debtor's estimate of the fair market value of the property in which the debtor claims an exemption. Unlike the statutory basis for the exemption, or the dollar amount of the exemption, the fair market value of the property is not readily determinable by reviewing the schedules. Instead, the actual value of the property can only be fairly accurately estimated by an appraisal or ascertained by an eventual sale. The trustee has the discretion, for a reasonable time, to determine whether or not the estate will benefit from the sale of the property. If the trustee sells the property, the debtor is entitled to recover the entire listed exemption amount from the sale proceeds with the remainder available for distribution to the creditors. Conversely, if the trustee fails to sell the property within a reasonable time, the trustee should abandon the property. After a trustee has had adequate opportunity to sell property, a debtor may compel abandonment if it is shown the property has no benefit to the estate.

*Id.* at 535–36.

In *DeSoto,* the bankruptcy court ruled that shares of stock which the debtors valued at $1.00 and claimed as exempt in the amount of $1.00 did not automatically revest in the debtors, despite the Chapter 7 trustee's failure to object to the exemption claim within the 30 days allowed by Rule 4003(b). In so ruling, the bankruptcy court examined *Taylor* and opined:

If *Taylor* were read in the manner suggested by the Debtors under the facts of this case, it would impose a judicially-created deadline for a trustee to object to the valuation of property. No such requirement or deadline is found in the Bankruptcy Code or Rules, and this Court does not believe that the United States Supreme Court created one in *Taylor.*

*DeSoto,* 181 B.R. at 708.

In *Gaylor* the bankruptcy court reminds us that "[c]ourts have also consistently held that the debtor's property remains property of the estate to the extent its value exceeds the statutory amount which the debtor is permitted to exempt." *Gaylor,* 123 B.R. at 239 (citations omitted). "[A]n uncontested claim of exemption is effective to exempt only the exemptible value of the property and not the entire asset." *Id.*

In *Taylor* the Supreme Court expressly rejected the position that had been adopted by the Eighth Circuit in *Halverson v. Peterson (In re Peterson),* 920 F.2d 1389 (8th Cir.1990), that a debtor's claimed exemption will be disallowed despite the trustee's failure to timely object under Rule 4003(b), if the trustee is able to show that the debtor did not have a good-faith statutory basis for the claimed exemption. Since the Supreme Court handed down *Taylor,* the Eighth Circuit has cited and briefly discussed *Taylor* in one case, *Abramowitz v. Palmer,* 999 F.2d 1274 (8th Cir. 1993). In *Abramowitz* the sole issue before the Eighth Circuit was one of jurisdiction. The bankruptcy court had ruled in Dr. Abramowitz's adversary action that the debtor/husband and non-debtor wife had purchased their residence with funds they fraudulently obtained from Dr. Abramowitz, and that they held the house in constructive trust for him. The district court affirmed. Mrs. Palmer appealed to the Eighth Circuit on the sole ground that

the bankruptcy court lacked subject matter jurisdiction over the adversary claims that Dr. Abramowitz brought against her. Mrs. Palmer argued that any claim by Dr. Abramowitz against her, a non-debtor, was a non-core proceeding unrelated to her husband's bankruptcy case and, specifically, that the Palmers' home was not within the jurisdiction of the bankruptcy court. The Eighth Circuit stated:

> Ms. Palmer asserts ... that because the bankruptcy trustee failed to object to the exemption of the home from the bankruptcy proceedings the home effectively "fell out" of the estate. We agree. In *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), the Supreme Court held that failure to object to a debtor's claim of exemption within the 30–day time limit prescribed by Bankruptcy Rule 4003(b) precludes the trustees and creditors from challenging the exemption of that property after the 30 days have expired. In this case, Dr. Palmer claimed the Missouri home as exempt and thus it did not remain part of the bankruptcy estate for distribution as neither the trustee nor any creditor filed an objection. We agree that the trustee is now precluded from including the Missouri home in Dr. Palmer's bankruptcy estate.

*Abramowitz*, 999 F.2d at 1276–77. The Eighth Circuit did reject Mrs. Palmer's argument that if the home was not property of the bankruptcy estate, any claim regarding the home was outside the bankruptcy court's jurisdiction, and held that the bankruptcy court properly exercised subject matter jurisdiction over the residence despite its exempt status and properly exercised "related to" jurisdiction over Mrs. Palmer. *Id.* at 1277, 1280.

In *Snyder v. Dewoskin (In re Mahendra)*, 131 F.3d 750 (8th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1678, 140 L.Ed.2d 815 (1998), in the context of a Chapter 7 trustee's complaint to determine the validity, priority and extent of a lien held by the debtor's attorney, Eric Snyder,

on the debtor's homestead property; a motion for review of attorney's fees; and a motion for sanctions on the debtor's attorney, the Eighth Circuit, without citing *Taylor*, stated:

> Third, we turn to the issue of Snyder's claimed interest in Debtor's homestead exemption. As of the petition date, the rights in Debtor's exemption were determined. *See Armstrong v. Peterson (In re Peterson)*, 897 F.2d 935, 937 (8th Cir.1990). Neither party disputes that Debtor was entitled to an $8,000 homestead exemption pursuant to Mo.Rev. Stat. § 513.475 (1994). However, Snyder apparently contends that Debtor's homestead exemption is valid against all creditors except Snyder. We disagree. Pursuant to Fed.R.Bankr.P. 4003(b), the trustee and creditors have the right to object to the claimed exemptions within thirty days after the conclusion of the first creditors' meeting. Unless such an objection is filed, the property claimed as exempt by the debtor is exempt. *See In re Stanley*, 143 B.R. 900, 903 (Bankr. W.D.Mo.1992). In the present case, the first meeting of creditors concluded on December 31, 1994; therefore, Snyder is time-barred from objecting to Debtor's homestead exemption as applied against Snyder.

*Snyder*, 131 F.3d at 757.

The Eighth Circuit has not been called upon to address the situation confronting this Court in which the Shelbys have a statutory basis for their claimed exemption and have claimed an exemption amount within the statutory limit, but the Trustee disagrees with their assertion of the fair market value of the personal property claimed as exempt and seeks to challenge the valuation outside the 30–day period of Rule 4003(b). Further, this Court has been unable to locate a lower court case within the Eighth Circuit that has addressed this precise issue.

The Court has located a pre-*Taylor* case authored by the late Honorable Dennis J. Stewart, which at first glance seems to

lend some support to the Shelbys' position. In *Williams v. Rutherford (In re Rutherford)*, 73 B.R. 665 (Bankr.W.D.Mo.1986), the Chapter 7 debtor claimed an exemption in household goods that he valued at $565. Thereafter the debtor's residence was destroyed by fire. The trustee received checks from the debtor's two insurance companies, one from the American Family Insurance Group in the total amount of $40,008, $30,000 for the dwelling and $10,008 for the household furnishings; and one from the Vernon County Mutual Insurance Company in the total sum of $18,000, $15,000 for the dwelling and $3000 for the household furnishings. In relevant part, the trustee contended that he was entitled to all but $565 of the proceeds for the household furnishings because that is all that the debtor claimed as exempt. The debtor asserted that he was entitled to all of the insurance proceeds in the sum of $13,008 because the proceeds were for the replacement value of the household goods that he had claimed as exempt. The bankruptcy court summarily agreed with the debtor based "upon the reasoning" of *In re Snow*, 21 B.R. 598 (Bankr.E.D.Cal. 1982). *Rutherford*, 73 B.R. at 667–68.

In *Snow* the debtor claimed an exemption under California law for household furnishings and supplies in the amount of $1500 and for wearing apparel in the amount of $200. Thereafter a fire destroyed the debtor's residence and all of the contents. Allstate Insurance Company agreed to pay $19,834 in proceeds as the replacement cost for the destroyed contents. The pertinent issue before the bankruptcy court was whether the trustee or the debtor was entitled to the amount of the insurance proceeds in excess of the amount of the debtor's claimed exemptions in the household furnishings and supplies and wearing apparel. The bankruptcy court ruled in favor of the debtor and opined:

> [T]he Trustee asserts that the Debtor is bound to the amount claimed in his original exemption schedule and any excess

proceeds over this $1,500.00 amount should be drawn into the bankruptcy estate. The Trustee's assertion ignores the legal effect of an allowed exemption. Assets properly exempted by a debtor are withdrawn from the bankruptcy estate and title to those exempt assets is vested in the debtor to carry into his fresh start. The bankruptcy estate has no interest whatsoever in exempt assets.

In the instant case, the contents of the residence of the Debtor were properly exempted and title had vested in the Debtor before the fire destroyed them. The bankruptcy estate had no interest in those exempt assets. Thus, when these contents were destroyed by fire, the Debtor was the sole owner of the insurance proceeds covering the contents. If the Debtor had chosen to sell the contents after July 29, 1982 (the deadline for filing objections to Debtor's claim of exemptions), certainly the Trustee would have no valid claim to the sales proceeds, regardless of amount.

This analysis is in line with the practical considerations of the filing of a bankruptcy schedule by a debtor. On the date that a debtor signs his schedules, the bankruptcy rules require that he value his assets at their present market value. He does not value them at their replacement cost because to do so would be contrary to the rules and would give the assets an inflated value. Thus, to hold that the Debtor should have estimated the replacement cost of his exempt assets in case these assets were to be destroyed by fire would be to penalize an honest debtor. In this case, it is to the Debtor's credit that he insured the contents of his dwelling house against loss for replacement rather than market value. Should he elect to completely replace the contents, all of the insurance proceeds will be presumably exhausted. Except for having newer contents, he will have no more nor less than before the fire. Pursuant to the above analysis, the Debtor is entitled to the entire amount of his insurance pro-

ceeds for the loss of the contents of his residence.

*Snow,* 21 B.R. at 601.

A close reading of *Rutherford* and *Snow* reveals an issue substantially different from the issue before this Court. In those two cases, there was no disagreement between the debtor and the trustee as to the market value of the household goods claimed as exempt. The Chapter 7 trustee in each case unsuccessfully attempted to pull into the estate the insurance proceeds for the replacement value of the destroyed property. This Court has no quarrel with the result reached in *Rutherford* and *Snow.* Further, *Snow* was decided by a bankruptcy court in California, which is part of the Ninth Circuit. As discussed above, the Ninth Circuit in *Hyman v. Plotkin (In re Hyman),* 967 F.2d 1316 (9th Cir.1992), opined that a Chapter 7 trustee is not bound by the value a debtor places on an asset when the trustee does not object to the claimed exemption within the 30 days allowed by Rule 4003(b).

Despite a few lower court cases to the contrary,[2] which the Court will not discuss in an attempt to preserve some measure of brevity, this Court agrees with the Ninth Circuit, Seventh Circuit and Fourth Circuit (in its unpublished opinion affirming the district court) that a Chapter 7 trustee is not bound by the debtor's valuation of property and that the trustee may challenge the market value that a debtor has placed on property claimed as exempt for which the debtor has a legal basis for claiming the exemption beyond the 30–day time period of Rule 4003(b). In this case, the Shelbys have a legal basis for claiming their exemptions pursuant to the Missouri exemption statutes and have claimed an amount exempt within the limits of those statutes. However, the Trustee is not bound by the Shelbys' valuations of the property claimed as exempt and, even though the 30–day time period of Rule 4003(b) has run, he may object to the

valuation placed by the Shelbys on the original items of household goods and furnishings claimed as exempt when they filed their bankruptcy petition in addition to the valuation placed by the Shelbys on the late-disclosed items claimed by them as exempt in their amended Schedule C.

### 3. *Exemption scheme under Missouri law*

■ To briefly summarize their arguments, the Shelbys claim that under Missouri law they are entitled to keep all the specific items of personal property they have claimed as exempt and are not limited to receiving just cash from the Trustee in the amount of their exemption rights upon the sale of the property. The Shelbys rely on section 513.445 of the Missouri Revised Statutes, which states in pertinent part:

**Officer shall apprise party of right to select, notice, contents—claims for exemption, how made, when—selection how made—oath administered—court review of exemption claim, when, notice**

1. It shall be the duty of the officer in whose hands any execution may come, within three days after he shall have levied the same, to apprise the person against whom such execution has issued that an execution has been levied and of the property exempt, if any, under sections 513.430 and 513.440, and his right to hold the same as exempt from attachment and execution, together with the fact, generally stated, that there are certain exemptions under state and federal law which the judgment debtor may be able to claim with respect to the property levied upon, and describing the procedure for claiming same as exempt. The notice shall also inform the person against whom such execution was issued of the manner in which he may obtain a specific description of the property upon

---

**2.** *E.g. In re Okoinyan,* 135 B.R. 691 (Bankr. S.D.Fla.1991); *Seifert v. Selby,* 125 B.R. 174 (E.D.Mich.1989); *In re Syrtveit,* 105 B.R. 599 (Bankr.D.Mont.1989).

which the levy was made. Such notice may be served in the same manner as a summons, or by mailing same to the judgment debtor at his last known address by U.S. regular mail. Service by mail shall be complete upon mailing.

2. The judgment debtor may make claim for exemption by filing a verified request with the levying officer within twenty days after notice of the levy. Upon receipt of a verified request, the levying officer shall notify the party requesting the execution forthwith that a claim of exemption has been filed, except that where the levy is in the form of a garnishment upon the judgment debtor's wages, no such notification is required. The levying officer may summon three disinterested householders, who, after being sworn honestly and impartially to appraise the property exhibited to them, shall proceed to appraise and set apart to said judgment debtor the property exempt to him under this chapter, and the officer levying such execution shall have authority to administer the oaths required by this section.

3. The levying officer shall release from the execution items of cash or property selected by the judgment debtor to the extent required by law. . . .

Mo.Rev.Stat. § 513.445 (Supp.1999). Section 513.445 does support the Shelbys' position that they are entitled to keep specific items of property that they have claimed as exempt. However, section 513.445 expressly refers to the exemption rights contained in sections 513.430 and 513.440, which place dollar limitations on the amount of property that a debtor may claim as exempt. Therefore, although the Shelbys may claim as exempt and keep specific items of household goods and furnishings, the items they choose may not exceed the dollar limits set by the Missouri exemption statutes.

■■■ The Court's position is well-supported by Missouri case law. In *Caldwell v. Renfro*, 99 Mo.App. 376, 73 S.W. 340,

341–42 (1903), the Court of Appeals of Missouri opined:

> Exemption rights are purely of statutory origin, and exist only so far as thereby created. The statutes of exemption, being benevolent and humane in their character, have been given a liberal construction so as to give full effect to the intention of the legislature, but no such construction should be given as to evade the purpose of the statute, and the intention of the lawmakers in extending charity to the impecunious must also be just to the creditors.

Even though Missouri exemption statutes are liberally construed, " 'a court must be careful not to depart substantially from the express language of the exemption statute or to extend the legislative grant.' " *In re Goertz*, 202 B.R. 614, 618 (Bankr. W.D.Mo.1996) (citing *Murray v. Zuke*, 408 F.2d 483, 487 (8th Cir.1969), and quoting *In re Davis*, 136 B.R. 203, 207 (Bankr. S.D.Iowa 1991)).

In *State, to Use of McClenden v. Jungling*, 116 Mo. 162, 22 S.W. 688 (1893), the debtor had a horse with an appraised value of $450. The exemption statute in effect at the time, in pertinent part, exempted from execution working animals with a value of $150, or a choice of property not exceeding $300 in value. The Supreme Court of Missouri held that because the exemption statute did not operate to exempt a working animal of a value greater than $150 nor total property exceeding $300 in value, the constable properly sold the horse at auction, even though it only brought $210.

In *State, to Use of Codding v. Finn*, 8 Mo.App. 261 (1880), the Court of Appeals of Missouri opined that although the "exemption laws are to be liberally construed to effectuate the object of the Legislature, which is to mitigate suffering in the family of poor debtors," the appellate court declared that the "execution debtor, no matter what other property he may have, has a right to select and claim any particular property up to the limit fixed by law,"

which at that time was $300, exclusive of $100 of furniture and household goods.

In *Brown v. Hoffmeister*, 71 Mo. 411 (1880), the debtor/attorney owned a library of law books worth $3000 and other personal property worth $700. The debtor claimed that all of the books and other personal property were exempt. The marshal levied upon and sold part of the books. The debtor sued contending that all of the books were exempt from execution and that the levy was illegal. The Supreme Court of Missouri upheld the sale ruling that although under the exemption statute in effect at the time a lawyer could select such books as might be necessary to his profession, those books had to be selected in the place of other property, and the books could not exceed in value the other property in lieu of which the books might be selected. The Court opined that "the mere option of the debtor should not enlarge his exemption under the law." *Id.* at 413.

It is clear that the Missouri exemption statutes are value-based. The debtor may not claim as exempt any property that exceeds the dollar limitations imposed by the exemption statutes.

4. *Procedure to be followed in this case*

▮▮▮ Judge Federman has already approved the Trustee's hiring of an auctioneer and sale of property. The Shelbys have not appealed that order, nor sought to vacate or set it aside. The Shelbys' Chapter 7 case is almost three years old and it is time to put it to rest. This Court will set out below what this Court believes is the appropriate procedure the Trustee must follow in this case prior to selling the property claimed by the Shelbys as exempt. First, the Trustee must have the household goods and furnishings at issue appraised. The Court orders the Shelbys

to cooperate with the Trustee in this regard. Because section 522(a)(2) of the Bankruptcy Code defines "value" to mean "fair market value as of the date of the filing of the petition," the household goods and furnishings claimed as exempt will be assigned appraised values as of the date the petition was filed in this case, which was June 11, 1996.[3] If the Shelbys disagree with the values assigned by the appraiser hired by the Trustee, they may seek an independent appraisal at their own expense. After the household goods and furnishings are appraised, the Shelbys may either choose to keep specific items of household goods and furnishings for which the appraised value does not exceed the dollar limits of the Missouri exemption statutes, or wait until the Trustee conducts the auction and then bid upon specific items of their choice that are within the dollar limits of the Missouri exemption statutes. In other words, the Shelbys may either keep property claimed as exempt at its appraised value prior to the auction, or wait to bid upon the property at the auction. However, in no event will the Shelbys be allowed to keep household goods and furnishings with a value in excess of the dollar limits set by the Missouri exemption statutes. Household goods and furnishings purchased by the Shelbys post-petition are to be excluded from the appraisal and sale process. Finally, the Trustee must have a reasonable basis to believe that the household goods and furnishings will sell for their appraised value prior to conducting the auction.

This Court believes that 90 days is a sufficient period of time in which to have the property appraised and to conduct the auction. If the Trustee or the Shelbys require additional time, either may move the Court for such extension, provided reasonable grounds exist for requesting same.

---

3. While "post-filing appreciation of fully-exempted property belongs to the debtor," *see Allen v. Green (In re Green)*, 31 F.3d 1098, 1101 n. 2 (11th Cir.1994), post-petition appreciation of partially exempt or non-exempt property does inure to the trustee for the benefit of the estate. *See Alsberg v. Robertson (In re Alsberg)*, 68 F.3d 312, 314–15 (9th Cir. 1995), *cert. denied*, 517 U.S. 1168, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996).

*Conclusion*

Based on the above discussion, the Chapter 7 Trustee's objection to the Shelbys' amended list of exemptions is SUSTAINED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Fed. R.Bankr.P. 7052.

So ORDERED.